1   ANTONIO L. CORTÉS
    Attorney at Law
2   Bar No. 142356
    528 Wisteria Way
3   San Rafael, California 94903
    Tel: 415-256-1911
4   Fax: 415-256-1919
5
    Attorney for Plaintiff
6   Wenceslao Bojorquez

7

8                   UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
9

10  WENCESLAO BOJORQUEZ          )   CASE NO.  CV 09-3684 SI
                                 )
11                               )   **FIRST AMENDED COMPLAINT**
                   Plaintiff,    )
12                               )   (TRUTH IN LENDING ACT, REAL
         v.                      )   ESTATE SETTLEMENT
13                               )   PROCEDURES ACT, CIVIL CODE §
                                 )   1632, CONSTRUCTIVE FRAUD,
14  MARTHA GUTIERREZ, MIGUEL     )   EQUITABLE RESCISSION, FRAUD,
    GUTIERREZ, INC., MARIN 1 REAL)   DECEIT, FAIR CREDIT
15  ESTATE, INC., REALTYCOMP.COM-)   REPORTING ACT, FAIR HOUSING
    SAN FRANCISCO, TJOMAN        )   ACT, PREDATORY LENDING,
16  BUDITASLIM, DOCMAGIC, INC.,  )   NEGLIGENCE, NEGLIGENCE *PER*
    OWNIT MORTGAGE SOLUTIONS,    )   *SE*; BREACH OF FIDUCIARY
17  INC., MORTGAGE ELECTRONIC    )   DUTY, EQUAL CREDIT
    REGISTRATION SYSTEMS, INC.,  )   OPPORTUNITY ACT, )
18  OCWEN LOAN SERVICING, LLC,   )
    COUNTRYWIDE HOME LOANS,      )
19  INC., LITTON LOAN SERVICING LP,)
    MORTGAGE SERVICES, INC.,     )
20  SPECIALIZED LOAN SERVICING,  )   **JURY DEMANDED**
    LLC, CHICAGO TITLE COMPANY,  )
21  and CINDY BOUNVILLE,         )
                                 )
22                               )
                   Defendants    )
23  _____)

24
                 Plaintiff Wenceslao Bojorquez alleges:
25

26

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911       27
FAX: (415) 256-1919
                     28
                                      1
     FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1.     By this Complaint, Wenceslao Bojorquez ("Plaintiff" or "Mr. Bojorquez") seeks redress of the fraudulent, illegal, negligent, and predatory lending, collection, and real estate sales practices of Defendants.

2.     At all times relevant hereto, Plaintiff Wenceslao Bojorquez has been a resident of the California Cities of San Rafael, County of Marin, and Richmond, County of Contra Costa.

3.     On information and belief, Defendant Martha Gutierrez ("Ms. Gutierrez") was, at all times relevant hereto, an adult resident of Marin County, California.

4.     On information and belief, Defendant Miguel Gutierrez ("Mr. Gutierrez") was, at all times relevant hereto, the husband of Martha Gutierrez and an adult resident of Marin County, California.

5.     On information and belief, Defendant Marin 1 Real Estate, Inc. ("Marin 1") was, at all times relevant hereto, a California Corporation with its principal place of business in Santa Rafael, California and doing business under the name of "Mortgage, Inc."

6.     On information and belief, Defendant Mortgage Services, Inc. ("Mortgage Services") is a business entity of unknown nature owned by, controlled by, or otherwise affiliated with Marin 1, or a dba of Marin 1 or one or more of its employees, and acting as the agent or alter ego of Marin 1 with respect to the matters of concern in this Complaint.

7.     On information and belief, Defendant Realtycomp.com-San Francisco was either the "dba" of a person, or else a business entity of unknown character,

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

2
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

doing business as a mortgage broker in San Francisco, California at all times relevant hereto.

8.      On information and belief, Defendant Tjoman Buditaslim ("Mr. Buditaslim") was, at all times relevant hereto, a natural person living in San Francisco California doing business as Realtycomp.com-San Francisco, and/or its principal, control person, or chief officer, and causing it to act as it did with respect to some or all of the transactions that are the subject of this action.

9.      On information and belief, at all times relevant hereto, Defendant DocMagic, Inc. ("DocMagic") was a California Corporation with its principal place of business in Carson, California, engaged in the business of mortgage loan document preparation in the State of California, sometimes under the name of "DocMagic, Inc."

10.     On information and belief, Defendant Ownit Mortgage Solutions, Inc. ("Ownit") was, at all times relevant hereto, a California Corporation with its principal place of business in Woodland Hills, California.

11.     On information and belief, Defendant Mortgage Electronic Registration Systems, Inc., ("MERS") was, at all times relevant hereto, a Delaware Corporation with its principal place of business in Flint Michigan that has no appointed agent for service of process in California, that has otherwise taken pains to institute its corporate structure in a manner that intentionally maximizes the difficulty of serving it with process, and that serves as the nominee of Ownit with respect to all or most of the allegations in this Complaint concerning Ownit.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

3
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

12.     On information and belief, Defendant Litton Loan Servicing, Inc. ("Litton") was, at all times relevant hereto, a Delaware Corporation with its principal place of business in Houston, Texas.

13.     On information and belief, Defendant Ocwen Loan Servicing, LLC ("Ocwen") was, at all times relevant hereto, a Delaware Limited Liability Company with its principal place of business in West Palm Beach, Florida, doing business in California as a loan servicing agent.

14.     On information and belief, Defendant Specialized Loan Servicing, LLC, ("Specialized") was, at all times relevant hereto, a Delaware Limited Liability Company with its principal place of business in Highlands Ranch, Colorado.

15.     On information and belief, Defendant Countrywide Home Loans, Inc. ("Countrywide") was, at all times relevant hereto, a New York Corporation with its principal place of business in Calabasas, California.

16.     On information and belief, Defendant Chicago Title Company ("Chicago Title") was, at all times relevant hereto, a California Corporation with its principal place of business in Santa Ana, California.

17.     On information and belief, Defendant Cindy Bounville was an officer of Chicago Title and a resident of Marin or Contra Costa County, California.

18.     On information and  belief, and at all times herein mentioned, each Defendant was acting as an agent, servant, employee, and/or co-conspirator of the remaining Defendants and each other, and was acting within the scope of such agency, employment, or conspiracy in doing the things herein alleged.  Each Defendant, in doing the acts or in omitting to act as alleged in this complaint, was acting in the course and scope of

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

4
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

his, her, or its actual or apparent authority pursuant to such agencies, or within the scope of his, her, or its conspiracy with other Defendants; or the alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by each other Defendant as principal.

19.     Jurisdiction.  This action arises under the Truth in Lending Act (TILA), 15 U.S.C. § 1640, Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2601, *et seq.*; the Fair Credit Reporting Act (FCRA), 15 USC, § 1681, *et seq.,* the Equal Credit Opportunity Act (ECOA), 15 USC § 1691, *et seq.*, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, the Fair Housing Act ("FHA"), and the Laws of the State of California.  This Court has jurisdiction under 28 USC § 1331 in that Plaintiff's claims arise under the Constitution and Laws of the United States of America.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claims of Mr. Bojorquez arising out of the laws of the State of California.  This Court also has jurisdiction under 12 USC § 2614 of RESPA and 15 USC, § 1681g of FCRA.

20.     Venue.  Venue is proper under 28 USC § 1391 because, on information and belief, some or all Defendants reside in the Counties of Marin, San Francisco, and Contra Costa, in the State of California, because all or most of the events giving rise to the complaint transpired in those Counties, and because all or most of the events giving rise to the complaint concern real property located in the County of Contra Costa, State of California.

## FACTS COMMON TO ALL CLAIMS

21.     Mr. Bojorquez is 67 years of age.  For the seven years prior to this filing, Mr. Bojorquez has been an El Salvadorian Citizen legally residing in the United

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

5
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

States of America.  Mr. Bojorquez can neither speak nor read English, and is only

marginally literate in Spanish.  His literacy level is roughly equivalent to that of a sixth

grade student who speaks and reads only Spanish.

        22.      At all times relevant hereto, all individual Defendants and all

representatives of the Corporate Defendants having contact with Mr. Bojorquez were aware

that he cannot read, understand, or speak the English language, and that he can speak only

in his native tongue, Spanish.

        23.      At some time prior to 2005, Defendants Ownit, MERS, DocMagic,

Specialized, Ocwen, Litton, Countrywide, and DocMagic formed and commenced operating

a joint enterprise to sell mortgage-loan products to Spanish-speaking persons of foreign

nationalities through brokers known to have no incentive to accurately report such

mortgagors' ability to repay the loans, to provide loan documentation to such persons only

in the English language without translation to increase the likelihood that the prospective

mortgagors would agree consume those loans, regardless of whether they did so by fraud or

mistake, thereby maximizing the number of loans sold, to register such mortgages on a

nationwide basis to make them as marketable as possible, enabling the conspirators to sell

or assign such mortgage-loan products without the actual consent of the mortgagors in order

to insulate themselves from their irresponsible choices of mortgagors, to buy, sell, and

otherwise transfer servicing rights freely without the actual consent of the mortgagors, to

pool such mortgage products into mortgage-backed securities, and to collect payments due

under those mortgage-loan products using Spanish-language communications whenever it

was to their advantage to do so, all in intentional disregard and violation of the requirements

of California Civil Code § 1632, which required them to make all such terms known to

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Spanish-speaking mortgagees in the language in which such mortgage loans were negotiated with such mortgagees, and with the further intention of depriving non-English speaking mortgagees of their rights under TILA, RESPA, ECOA, FRCA, FDCPA, and FHA ("the Lending and Servicing Conspiracy.").  The four main purposes of the Lending and Servicing Conspiracy were:  (a) to maximize mortgage loan sales by using English-only loan documentation to conceal material mortgage terms of interest to borrowers; (b) to maximize mortgage loan sales by giving the conspirators' loan brokers every incentive to sell mortgage loans without proper consideration of whether borrowers could afford them; (c) to maximize collections from Spanish-speaking borrowers by communicating terms important to the conspirators in Spanish, while communicating those important to the borrowers only in English; and (d) to  insulate the lending conspirators from the inevitably-resulting bad loans by assigning and or securitizing them.  Members of this conspiracy included Ownit, Ocwen, Countrywide, Litton, and Specialized.

24.     Ms. Gutierrez publicizes her real estate brokerage business in a manner calculated to:  (a) appeal to Hispanic persons who do not own a home; (b) appeal to Hispanic persons who do not speak English well and/or habitually communicate in Spanish in preference to English; and (c) convey, by means of Biblical quotes and otherwise, that Ms. Gutierrez is of high moral character and therefore safe to trust.

25.     Ms. Gutierrez publicizes her real estate business in that manner in order to attract recent Spanish-speaking immigrants unfamiliar with real estate transactions in order to induce them to purchase real estate in a manner that generates fees for Ms. Gutierrez.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

7

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

26.     In or before 2005, when Mr. Bojorquez was 64 years of age, and lived in an apartment in Fairfax, California, County of Marin, that he shared with a roommate.  His share of the monthly rent was $475.  He had never purchased or owned real estate in the State of California, his native Guatemala, or elsewhere.  Financially, he was absolutely incapable of purchasing any real estate in California, regardless of how extremely humble it might have been, as was readily apparent to any person who knew anything about his income and net worth.

27.     In early 2005, Ms. Gutierrez initiated contact with Mr. Bojorquez. She told him "I want to help you – you need to find a house to buy" or words to that effect. Despite Mr. Bojorquez's expressed and correct belief that he lacked the money or credit to purchase any real property, Ms. Gutierrez, communicating with Mr. Bojorquez solely in Spanish, persisted until she had convinced him to at least consider buying a home by telling him repeatedly that he would be better off if he bought one and that she could and would arrange a home purchase transaction in a manner so that he could afford it despite his very limited income and net worth.  She knew, however, that she could not arrange for any purchase of California real estate by Mr. Bojorquez on terms he could afford.

28.     In or around February 2005, Ms. Gutierrez came to Mr. Bojorquez's apartment in Fairfax, where she continued to press him to consider purchasing real property. He was alone.  She met with him for about one-half hour, speaking with him exclusively in Spanish.  She questioned him thoroughly about his credit, and wrote down his answers on a number of papers she brought with her but did not show him.  She asked him for his income tax records, and he gave them to her.   If the papers on which she wrote during that meeting were loan applications, she did not tell that to Mr. Bojorquez.   He does not recall signing

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

8
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

anything for Ms. Gutierrez that day. She said she was going to contact some banks, and try to get two loans. When she left, she did not leave him copies of any of the papers she brought. She did not show him what she had written down, and he did not know what she had written down.

29. About two weeks later, Ms. Gutierrez again appeared at Mr. Bojorquez's home in Fairfax. This time his roommate was there. She told him that "both loans had been approved," and that they were both "ready." She brought paperwork for him to sign, but he refused to sign it for a number of reasons, including that he did not know what loan terms had been approved, and that, having reflected on his situation, he had concluded that it could not really be possible for him to purchase any real property, despite Ms. Guteirrez's urgings to the contrary. Ms. Gutierrez expressed emphatic displeasure with his decision and left.

30. Ms. Gutierrez then began a telephone campaign to persuade Mr. Bojorquez to change his mind and sign paperwork to obtain the two loans she said were approved. She called him approximately five times per day for about two weeks, at all times of the day, sometimes as late as 10:00 pm. When Mr. Bojorquez remained adamant that he would not sign the loan documents, Ms. Gutierrez became emotional, sometimes beginning to cry and wail that she and her family would not be able to eat if he did not buy the Property, sometimes becoming verbally abusive and intimidating to Mr. Bojorquez, and sometimes taking a reassuring stance, making false representations, including: (a) that he would never have to pay much more than $2000 per month, (b) that he could easily rent out a room to cover his other living expenses, and (c) that she would personally provide him tenants to rent rooms from him for at least $1200 per month. When Mr. Bojorquez refused

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

9

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

to speak with her, she spoke to his roommate, Maria.  When Mr. Bojorquez and Maria stopped answering the telephone to avoid that onslaught, Ms. Gutierrez began to call Mr. Bojorquez's daughter, Carmen, telling her to get her father to stop worrying, that "everything is set," that he had a legal obligation to follow through with the loans, and that he would become wealthy, with her help, by doing so.

   31.  Within about two weeks, Mr. Bojorquez succumbed to that barrage, and made remarks indicating that his resolve to remain sensible was weakening.  Ms. Gutierrez quickly appeared at his home with Mr. Gutierrez, who may have been serving as a notary, and several documents, all in English.  All conversations at this meeting, and every other meeting, were completely in Spanish.  When Mr. Bojorquez realized that Ms. Gutierrez was coming to his home again, he was sufficiently suspicious, bewildered, and intimidated by her that arranged a tape recorder under his dining table and attempted to record what was said at that meeting.  Unfortunately, the recorder did not function.  Again, Mr. Bojorquez resisted, repeating that he could not afford the payment and that he would have no money with which to eat.  Ms. Gutierrez said that he would be able to make the payments by renting out rooms in the house, and that she would find tenants for him to do so.  When Mr. Bojorquez said that he did not understand what it was she wanted him to sign, and that he did not understand the course of action she was urging on him, she said "don't' worry, I'll come every afternoon and help you read the papers that the banks send you, and make sure you know what to do."  When Mr. Bojorquez still resisted, Mr. Gutierrez told him that agreeing to sign the papers was "a good decision," and that in two years he would earn $40,000 if he trusted them and worked with them as they proposed.  Finally, Mr. and Mrs. Gutierrez persuaded him, at least temporarily, that he could stop

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

paying rent in Fairfax and rent out the rooms in a new house as Ms. Gutierrez had instructed, and that he would be able to make the loan payments and, after a time, own his own home.  At that time, Mr. Bojorquez relented and signed the papers, which were all in English, and which Ms. Gutierrez told him were loan papers.  She said that now that everything had been approved, they were going to find a house for him, and also led him to believe that, because he had signed those papers, he was committed to buying a house.  Neither Ms. Gutierrez nor Mr. Gutierrez explained to him that, if he did not purchase a home, the loans would not be funded, and he would not have to make any payments.

32.     Fearing, based on Ms. Gutierrez's representations, that he would be in trouble if he did not use the loans Ms. Gutierrez had told him were approved, in or around March of 2005, Mr. Bojorquez found an "open" house in Richmond California that seemed like it might be a good value at not much less than the asking price, which was $399,000. He spoke to a Realtor there, who was the seller's agent, one Mauricio Martinez, and telephoned Ms. Gutierrez.  Ms. Gutierrez arrived almost immediately after he called her. She made a show of quickly looking through the house, then immediately informed Mr. Bojorquez that everything "looked good."

33.     The house was a single-family dwelling at 4600 Cypress Avenue, in the City of Richmond, County of Contra Costa, State of California, which can be legally described as Lot 3, in Block M, as shown on the Map of East Shore Park, filed June 29, 1910, In Map Book 3, Page 58, Contra Costa County Records. ("the Property").  The seller's asking price was $399,000, but Ms. Gutierrez persuaded Mr. Bojorquez to make an offer of $415,000 by representing to him that:  (a) if he did not offer more than the asking price he would not be able to acquire the Property; (b) other offers had been made on the

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

11
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Property; (c) she knew what she was doing; (d) he should trust her; and (e) he would make money if he did as she said.  Ms. Gutierrez failed and refused to disclose to Mr. Bojorquez that, in fact:  (a) the seller would almost certainly have accepted his full asking price; (b) there were no other offers outstanding on the Property; (c) sellers typically listed real property for the highest price they thought they might obtain; (d) the Property's assessed value was less than $100,000; (e) the Property's appraised value would correctly have been set at less than $375,000; (f)  Mr. Bojorquez's paying the higher price urged upon him by Ms. Gutierrez would increase the commission Ms. Gutierrez would receive as well as increasing the likelihood that she would receive one, all at unnecessary expense to Mr. Bojorquez; and (g) there was no possibility whatever that Mr. Bojorquez could obtain financing for Property on any conceivable terms from any lender who knew the true facts about his income and assets.

34.     At the time Ms. Gutierrez showed the Property to Mr. Bojorquez, she knew that his income had never significantly exceeded $26,000 per year, and that there was no conceivable possibility of his successfully purchasing a home for either $399,000 or $415,000.  Mr. Bojorquez clearly and repeatedly expressed his own view to Ms. Gutierrez that he could not possibly purchase a home for such prices, but she told him not to worry, that she would procure the Property on terms he could afford, and, if necessary, he could simply rent out rooms to other people, who she would supply, in order to make the payments.

35.     Explicitly relying on Ms. Gutierrez's representations, and as a direct result of his ignorance of the foregoing matters she failed and refused to disclose to him, Mr. Bojorquez verbally agreed to make the higher offer.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

12

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

36.     Soon thereafter, on or about April 3, 2005, Ms. Gutierrez appeared at Mr. Bojorquez's residence and presented him with a paper she said he had to sign.  On information and belief, the paper was a real estate purchase contract ("the Purchase Contract").  The Purchase Contract was written solely in English, and Ms. Gutierrez provided no written translation of its terms, with the result that Mr. Bojorquez remained almost completely ignorant of its provisions.  She did verbally describe some of its terms to him, but her verbal statements misrepresented a number of  material terms of the purchase contract and omitted other material terms.  Her material misrepresentations and omissions included, but are not limited to, the following:  (a) the Purchase Contract obligated Mr. Bojorquez to make first and second mortgage payments totaling as much $2592 per month, but Ms. Gutierrez represented that he would not have to pay more than $2000 per month; (b) the Purchase Contract gave Mr. Bojorquez a ten-day right to inspect and decline the condition of the Property, but Ms. Gutierrez did not inform Mr. Bojorquez of that right; (c) the Purchase Contract was contingent upon his obtaining financing at specified terms, and if he could not obtain financing on those terms, he had no duty to purchase the Property, but Ms. Gutierrez declined to inform Mr. Bojorquez of those terms; and (d) Ms. Gutierrez had not executed the Agency Disclosure portions of the Purchase Contract, and instead had them executed by Marin1, which she had never disclosed to Mr. Bojorquez as his agent, which he now believes it was.

37.     At the time Ms. Gutierrez sought Mr. Bojorquez's signature on the Purchase Contract, she made no mention of Marin 1, Mortgage Services, or Realtycomp.  Neither did she mention them to him at any time, before or after that.  Neither did she ever disclose to him that they would purport to represent him in any way in the purchase of the

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1    Property or the obtaining of financing therefore. Neither did she ever disclose to him that

2    Marin 1, Mortgage Services, and/or Realtycomp might receive fees related to the purchase.

3    Neither did he ever know that Marin 1, Mortgage Services, or Realtycomp existed until the

4    same year as the filing of this Complaint. Neither did Mr. Bojorquez ever make any

5    communication to Marin 1, Mortgage Services, or Realtycomp, or to the best of his

6    knowledge, receive any communication from any of them.

7

8            38.     Prior to the execution of the Purchase Contract, Mr. Bojorquez had

9    repeatedly and emphatically disclosed to Ms. Gutierrez and Mr. Gutierrez that his entire

10   income was only $500 per week, that his life savings did not exceed $5000, that he had no

11   other assets of significant value other except one 1986 Toyota Pickup truck worth

12   approximately $2500, and that making payments of more than $2000 per month was

13   impossible for him.

14

15            39.     All verbal negotiations and other verbal communications to and from

16   Mr. Bojorquez by Ms. Gutierrez, Marin 1, Mortgage services, and/or Mr. Gutierrez took

17   place in Spanish.

18

19            40.     Mr. Bojorquez did not, and could not have, completed loan

20   applications for the financing needed to purchase the Property. On information and belief,

21   Ms. Gutierrez, Mr. Gutierrez, Realtycomp, Mr. Buditaslim, Marin 1, and/or Mortgage

22   Services either procured Mr. Bojorquez's signature on a blank or completed loan

23   application without giving him to understand its nature or content, or one or more of them

24   forged his signature on a loan application he never saw. In either case, Mr. Bojorquez

25   alleges, on information and belief, that Ms. Gutierrez, Mr. Gutierrez, Realtycomp, Mr.

26   Buditaslim, Mortgage Services, and/or Marin 1 submitted false loan applications to Ownit.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919
27

28

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

In either case, Mr. Bojorquez is unaware of what information Ms. Gutierrez, Realtycomp,

Mr. Buditaslim, Marin 1, and/or Mortgage Services may have included on such applications

but alleges on information and belief that such applications falsely and grossly over-stated

his income and/or his assets.

       41.     On or about April 10, 2005, Mr. Bojorquez contacted Ms. Gutierrez

and told her that he did not wish to purchase the Property, or any other property, because,

on further reflection, he was sure he could not afford any such purchase.  He specifically

emphasized to Ms. Gutierrez that his entire income was only $2000 per month, except

during the summer months, when he had no income at all.  Ms. Gutierrez did not inform

him that he had no obligation under the Purchase Contract unless he obtained financing on

the terms specified therein, which would not likely occur, even though she had a duty to tell

him that as his real estate agent.  Neither did she inform him of his right to inspect the

Property and decline to purchase it based on that inspection, even though she had a duty to

tell him that as his real estate agent.  Continuing to be somewhat flustered and intimidated

by Ms. Gutierrez's abusive and threatening behavior whenever he attempted to tell her he

did not wish to purchase any property, and relying on her promises, Mr. Bojorquez abated

his pleas for her to stop the purchase in the face of her stiff resistance to them.

       42.     Soon after Mr. Bojorquez's pleas that Ms. Gutierrez stop the

purchase had abated, Ms. Gutierrez convinced him to meet her at a Denny's restaurant in

Richmond to sign other documents.  When he arrived, Mr. Gutierrez was there with Ms .

Gutierrez.  Together, they presented him with "a mountain of documents" for him to sign.

On information and belief, the documents were documents to bind him to the purchase and

Mortgage Loans at closing.  Ms. and Mr. Gutierrez were careful to conceal all the material

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

15
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

content of the documents, deflecting his requests for specific loan and payment terms with

responses such as "don't worry, we will make sure you are protected," "don't worry, you

will be able to afford the payments," and other such knowing misrepresentations.  Mr.

Gutierrez asked to see Mr. Bojorquez's identification documents, and, on information and

belief, either served as a notary or collected the information from those documents to

facilitate a fraudulent notarization from a notary who did not witness the signatures.

Neither Ms. nor Mr. Gutierrez explained the true terms of the loans, informed Mr.

Bojorquez that they, Realtycomp, Marin 1, Chicago Title, or any other person or entity,

would be paid fees as a result of the purchase transaction being made possible by his

execution of those documents.   Neither Ms. nor Mr. Gutierrez provided Mr. Bojorquez the

disclosures required by RESPA or TILA, gave him a HUD-1 or TILA disclosure document,

pointed out that such documents were included in the stack of documents he was signing (if

indeed such documents were included), or gave him notice of his right to rescind for a

period after execution, or any of his other rights they were required by law to bring to his

attention.  As with every other meeting with Mr. Bojorquez, all communications and

negotiations were conducted solely in the Spanish language.

       43.      On information and belief, the loan documents singed by Mr.

Bojorquez were prepared by DocMagic, Ownit, and MERS from information provided by

Ms. Gutierrez, Mr. Gutierrez, Realtycomp, Mr. Buditaslim, Marin 1, and/or Mortgage

Services.  At that time, no Defendant had correctly disclosed, verbally or in writing, any of

the following to Mr. Bojorquez:  (a) the amount of money Mr. Bojorquez would be required

to borrow in order to complete the proposed purchase; (b) the size of the monthly payments

Mr. Bojorquez would be required to pay on any loan he would need to take out in order to

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

16
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

complete the proposed purchase; (c) that, in addition to the $415,000 purchase price, Mr.

Bojorquez would be required to pay an estimated finance charge of $575,211 for the First

Mortgage; (d) that, in addition to the $415,000 purchase price, Mr. Bojorquez would be

required to pay an estimated finance charge of $163,518 for the Second Mortgage; (e) that

the <u>minimum</u> initial interest-only payments for the First and Second Mortgages would total

$2274, and therefore exceed Mr. Bojorquez's <u>entire</u> income (f) that after 24 months the

minimum monthly payments on the First Mortgage alone would increase to approximately

<u>150% of his entire income</u>; (g) that he should not purchase a home requiring payments that

would consume more than 35% of his income; (h) that by 2008 the First Mortgage

payments would increase even further; (i) that Mr. Bojorquez would be required to pay a

penalty of 20% of the principal amount of each purchase money loan if he refinanced either

of them during the first two years; (j) any other aspect of the cost of the financing Mr.

Bojorquez would be required to obtain to complete the proposed purchase; (k) that Mr.

Bojorquez was borrowing money to pay Defendant Realtycomp undisclosed fees of $8515;

(l) that Mr. Bojorquez was borrowing money to pay Defendant Ownit undisclosed fees of

$1225; (m) that Mr. Bojorquez was borrowing money to pay Defendant Chicago Title

undisclosed fees of not less than $1750; (n) that Mr. Bojorquez was borrowing money to

pay undisclosed fees of not less than $1932 to other parties; (o) the terms of the escrow

instructions that would govern the acts of the escrow officer in closing the transaction; (p)

that Ownit, after collecting its undisclosed fee, would immediately "sell" the first mortgage

to MERS, making the transaction, in substance, a loan directly from MERS to Mr.

Bojorquez for which Ownit received undisclosed fees; (q) that Mr. Bojorquez would have to

pay property taxes of over $4400 per year; (r) that the minimum monthly payments on the

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

First and Second Mortgages, though more than Mr. Bojorquez's entire income, would be interest-only payments, and not payments toward actually purchasing the Property at all; (s) that Mr. Bojorquez was required by First and Second Mortgages to pay for homeowner's insurance in addition to all of the foregoing; or (t) that Ms. Gutierrez would receive a commission from the sales proceeds that, on information and belief, exceeded $12,400.

44.     On the occasions that Ms. Gutierrez appeared at Mr. Bojorquez's apartment and at Denny's with documents to sign, it was readily apparent to all present that Mr. Bojorquez could not speak English at all.  All verbal communications between Mr. Bojorquez and others present were in Spanish.  On most occasions, Ms. Gutierrez presented him with papers which Ms. Gutierrez instructed him to sign.  All of those papers were written in the English language, and Mr. Bojorquez could understand nothing of what they said.  None of those papers were translated into Spanish, either verbally or in writing, at that time or at any later time, so there was no means by which Mr. Bojorquez could understand the terms of the agreements he was signing.  Mr. Bojorquez has received copies of virtually none of the documents he has signed, has never has been able to review them, and still does not know exactly what he purportedly agreed to.

45.     On information and belief, some of the papers signed by Mr. Bojorquez were loan documents produced by DocMagic, Ownit, and MERS.  All such loan documents, whenever signed, were produced in the English language.  All documents presented to Mr. Bojorquez related to the purchase or loan transactions were written solely in the English Language.  Neither DocMagic, nor Ownit, nor MERS provided Spanish-language translations of any of their loan documents.  Nor did any other Defendant.  On information and belief, it was the practice and policy of DocMagic, Ownit, and MERS to

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

provide all loan documentation to Spanish-speaking borrowers in English only, without written translations of any terms.  On information and belief, once those documents are executed, it was the practice and policy of MERS and Ownit, and their collection agents, Ocwen, Litton, Countrywide, and Specialized, to provide Spanish-language translations of notices of escalation of the payment amounts pursuant to the un-translated but nonetheless claimed initial terms, and to provide Spanish-language translations of communications made in the course of "servicing" the loans, when it is to their advantage to have the borrower understand particular terms not previously translated, or which made it more convenient for those Defendants to collect their claimed fees, their claimed service charges, the lenders' interest, and/or the borrowed funds.  Whether or not those were the general practices and policies of DocMagic, MERS, Ownit, Countrywide, Ocwen, Litton, and Specialized, those were the practices they followed with respect to Mr. Bojorquez.

46.     When Ms. Gutierrez, Mr. Gutierrez, Mr. Gutierrez, Realtycomp, Mr. Buditaslim, Marin 1, Mortgage Services, MERS, Ocwen, and DocMagic, presented the loan documents to Mr. Bojorquez and instructed him to sign them, they did not disclose to him that the loan terms were completely different from those verbally promised by Ms. Gutierrez, or that they were completely different than those set forth in the Purchase Contract.

47.     The Purchase Contract only obligated Mr. Bojorquez to purchase the property in the event that he was able to obtain:  (a) a $332,000 30-year fixed-rate fully-amortized first mortgage at an interest rate not higher than 5.5% per annum; and (b) a $83,000 20-year fixed-rate fully-amortized second mortgage at an interest rate not higher than 8.25% per annum.  The loan documents that Ms. Gutierrez, Mr. Gutierrez,

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

19
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Realtycomp, Mr. Buditaslim, Marin 1, Mortgage Services, MERS, Ocwen, and DocMagic presented to Mr. Bojorquez for his signature purported to bind him to: (a) a $332,000 30-year variable-rate mortgage at an initial interest-only rate of 5.75% per annum for the first 60 months under terms virtually certain to cause it to abruptly increase after that period and that could ultimately escalate to 28 years of amortized payments based on an interest rate of 11.75% per annum; and (b) an $83,000 second mortgage at an interest rate of 9.25% per annum. Worse, both loans included undisclosed 20% pre-payment penalty provisions to insure that Mr. Bojorquez could not escape the impossibly high cost of servicing them by shopping for a replacement loan. As a result, Mr. Bojorquez never learned the true terms of these loans until 2008, and, in the case of many key loan terms, 2009.

48. Some of the documents later received by Mr. Bojorquez were a preliminary title report ("PTR") and a homeowner's policy of title insurance that are believed to have been prepared by Chicago Title and Ms. Bounville to cause the purchase of that report and that policy by Mr. Bojorquez at the signing of title insurance and escrow documents at his home, or at Denny's, whichever it was, without knowledge that he was purchasing a PTR or title insurance, the cost of those items, or the terms of that insurance. All of the documents prepared by Chicago Title were in English, and none of those documents were translated into Spanish so that Mr. Bojorquez might understand them, either verbally or in writing. On information and belief, it is the policy and practice of Chicago Title and Ms. Bounville to prepare all such documents in English only, regardless of whether the person they are negotiating with can read documents so prepared. Whether or not that is their practice and policy, that is the practice they pursued with respect to all of their dealings with Mr. Bojorquez and his purchase of the Property.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

20
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

49.     To the best of his knowledge, Mr. Bojorquez has never filled out an application for credit for the approval obtained by Ms. Gutierrez, Realtycomp, Mr. Buditaslim, Marin 1, and Mortgage Services from Ownit and MERS.  Based on that fact, on the amount of financing that eventually issued pursuant to that approval, and on the fact that Mr. Bojorquez earned only $500 weekly, Mr. Bojorquez alleges, on information and belief, that Ms. Gutierrez, Mr. Gutierrez, Realtycomp, Mr. Buditaslim, and/or Marin 1 conspired to submit fraudulent information concerning Mr. Bojorquez to induce approval of the financing eventually supplied by Defendants Ownit and MERS to whom the fraudulent information is alleged, on information and belief, to have been submitted.

50.     The purchase transaction by which Mr. Bojorquez received title to the Property closed on or about May 20, 2005.  On information and belief, the purchase was made on the following terms, none or almost none of which, except for the purchase price, was disclosed to Mr. Bojorquez prior to his executing the purchase documents, or at any time for over two years thereafter:  (a) the purchase price of the Property was $415,000; (b) Mr. Bojorquez gave Ownit a first mortgage in the amount of $332,000 which obligated Mr. Bojorquez to make interest-only payments of $1591 for two years, and thereafter in an amount to be recalculated every six months to require payments partially composed of an interest component that could eventually rise to $3379  per month; (c) Mr. Bojorquez gave Ownit a second mortgage securing a home equity line of credit with a limit of $83,000, all of which had been drawn down at closing in order to pay the purchase price and which obligated Mr. Bojorquez to make payments of $683 per month, more or less, without any diminution of the underlying debt; (d) the first Mortgage was to be immediately assigned to MERS; (e) the servicing rights for the Second Mortgage were to be immediately assigned to

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

21
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Countrywide; (f) Mr. Bojorquez had paid fees of $8515 to Realtycomp for securing that primary and secondary financing; (g) Mr. Bojorquez had paid Ownit fees of $1225 for procuring for MERS his obligation to pay the first mortgage; (h) Mr. Bojorquez had paid Chicago Title $483 for a title policy to protect his lenders; (i) Mr. Bojorquez had paid Chicago Title $1268 in escrow fees; (j) Mr. Bojorquez had paid $480 in undisclosed fees to persons whose identity has never been disclosed to him orally or in writing in any language, but are believed to be Chicago Title and/or its officers and employees, including Ms. Bounville; and (k) Chicago Title would be the trustee under the deeds of trust securing the Mortgage Loans.

51.     At no time prior to closing was Mr. Bojorquez given any opportunity to choose a title insurer, escrow agent, or trustee other than Chicago Title, Ms. Bounville, and the undisclosed other recipients of his money, or to seek a title insurer or escrow agent willing to provide title insurance or escrow services at a lower price than the $1748 to $2231 he paid Chicago Title and/or Ms. Bounville for those closing costs.

52.     At no time prior to or after closing did any Defendant make the disclosures to Mr. Bojorquez that were required by TILA.

53.     At no time prior to or for two years after closing did any Defendant disclose to Mr. Bojorquez that the First Mortgage had a variable interest rate, or any other term of that loan.

54.     At no time prior to or for two years after closing did any Defendant disclose to Mr. Bojorquez that he would pay transfer taxes of $1453 at closing out of the borrowed funds.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

55.     At no time prior to or within two years of closing did any Defendant disclose to Mr. Bojorquez that Chicago Title was the closing agent, that Ms. Bounville was the closing agent's contact, the nature of the closing instructions that Defendants had caused to be given to Chicago Title, or that Chicago Title was the trustee under the Deed of Trust securing the First Mortgage.

56.     At no time prior to or within two years of closing did any Defendant disclose to Mr. Bojorquez that he was in any way represented by Realtycomp, Marin 1, Mortgage Services, or Mr. Buditaslim, none of whom Mr. Bojorquez was even aware existed the time of closing.

57.     On information and belief, the Property was worth significantly less than $415,000 at the time the purchase closed, and, on information and belief, was not worth more than $375,000 at the time of closing.

58.     The First and Second Mortgage Loans were of less than favorable terms for real estate purchase money loans at the time they were made, and were calculated to consume more than Mr. Bojorquez's entire income – requiring initial minimum payments totaling $27,288 per year, or 105% of Mr. Bojorquez's entire annual income, without any diminution in principal owed.  Further, the payments set to consume 105% of Mr. Bojorquez's entire income for two years were set to dramatically increase after that period. Both loans were made by Defendant Ownit, a large institutional lender which was, at that time, eager to lend money secured by purchase-money mortgages regardless of risks to borrowers, earn fees, then immediately re-sell the notes to MERS and/or Merrill Lynch, an affiliate of Ownit, which would securitize them and foist the resulting worthless securities off on hapless investors.  No Defendant informed Mr. Bojorquez that the onerous terms of

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

23
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1    these loans, and the fact that they were significantly less favorable than those stated in the

2    Purchase contract, were due in major part to his poor credit rating.  Regardless of those

3    facts, the loan fees charged to Mr. Bojorquez at closing without his knowledge or consent

4    were very large – at least $11,488 paid to Realtycomp, Ownit, Chicago Title, and other

5    undisclosed recipients of his money.  Finally, none of those Defendant fiduciaries disclosed

6    to Mr. Bojorquez that they had, on information and belief, submitted false load applications

7    to Ownit, or that Ownit had not approved the First and Second Mortgage Loans based on

8    Mr. Bojorquez's true financial information that he  had given to them.

9            59.     Shortly thereafter, Mr. Bojorquez began receiving demands for

10   payment on the First Mortgage from Litton and Ocwen, on behalf of MERS and Ownit, and

11   demands for payment on the Second Mortgage, from Specialized and Countrywide, on

12   behalf of MERS and Ownit, or whatever other entity to whom Ownit had assigned the

13   Second Mortgage.  Mr. Bojorquez dutifully proceeded to make the payments on the First

14   and Second Mortgages, using up his life savings until that ran out, then borrowing money

15   from members of his family and any other available sources he could find, until he could no

16   longer do that.  The collection agents for the Second Mortgage, and/or the holders of the

17   Second Mortgage Note repeatedly changed without notice to Mr. Bojorquez other than his

18   receipt of demands for money from purported assignees of the right to be the collection, or

19   "servicing" agent of Ownit, or whoever it may have assigned to Second Mortgage to.

20           60.     In or about June 2005, Mr. Bojorquez received a policy of title

21   insurance from Chicago Title.  It was written entirely in English and Mr. Bojorquez could

22   understand none of it, and did not understand what it was.  Nor was he informed that he had

23   paid for it.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

24

61.    In or about September 2005, Mr. Bojorquez received tax bill for property taxes from the Tax Collector for the County of Contra Costa.  Because it looked like a bill for over $4000, and because Ms. Gutierrez had not told him he would have to make payments other than those for the First and Second Mortgages, Mr. Bojorquez was alarmed, and quickly called her.  Ms. Gutierrez then came to his home, took a look at the tax bill, and told him "Oh, you are in luck, they are going to send you a check for this amount of money!"

62.    Until May 2007, Mr. Bojorquez continued beg and borrow in his attempts to perform his loan obligations.  He did so only due to his ignorance of:  (a) the fact that, due to the undisclosed terms of the First Mortgage, there was no chance at all that he would ever be able to purchase the Property; and (b) the fact that he was not paying any of the principal purportedly due on either the First or Second Mortgage.  If he had known those facts, he would not have made payments on either of the Mortgage Loans.

63.    In or about June 2007, Mr. Bojorquez received a statement from Ocwen demanding a First Mortgage Loan monthly payment of $2420 rather than the $1591 he had theretofore been paying for that loan.  Then, two months later, Ocwen raised its demand to $2628/month.   Mr. Bojorquez did not understand the reasons for those increases.  Soon thereafter, realizing that Ms. Gutierrez had lied to him about the monthly payments he would be required to pay, and seeing that there was no hope whatsoever of making the escalated payments or otherwise completing the purchase of the Property toward which he had expended so much, Mr. Bojorquez ceased making First Mortgage payments to Ocwen.

64.      Between May 20, 2005 and the filing of this Complaint, Mr. Bojorquez has paid sums not less than the following amounts to the following Defendants to satisfy his purported obligations under his purported purchase of the Property:  (a) $38,184 in First Mortgage interest to Ownit and its successors and assigns, including MERS, Litton, and Ocwen; (b) approximately $14,220 in Second Mortgage interest to Ownit and its agents, successors and/or assigns, including Specialized and Countrywide; (c) $8515 in fees to Realtycomp; (d) not less than $1751 to Chicago Title; (e) not less than $1932 to undisclosed "Service Providers" at closing; and (f) $1453 in transfer taxes.

65.      Some time after October 15, 2007, Mr. Bojorquez received a Notice of Default and Election to Sell under Deed of Trust purporting to give Mr. Bojorquez notice that Ownit and MERS would foreclose on the First Mortgage Deed of Trust.

66.      On information and belief, the purported promissory notes and trust deeds between Mr. Bojorquez and Ownit, and/or its successors and assigns, both contain agreements such that if Mr. Bojorquez is a prevailing party in this civil action against Ownit, MERS, or any of those Defendants agents, employees, successors, or assigns, then Mr. Bojorquez will be entitled to an award of his attorneys' fees reasonably incurred in bringing and pursuing this action.

67.      On information and belief, in or about January 2008, a company called Financial Title Company ("FTC"), purporting to be the trustee under the deed of trust securing the First Mortgage, sold the Property at a foreclosure by power of sale for the benefit of Ownit, MERS, or their successors in interest.  In or about March 2008 Mr. Bojorquez vacated the Property.  Mr. Bojorquez did not understand at closing that Chicago Title was the trustee, did not understand at foreclosure that FTC had become the trustee, and

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

still does not understand how that occurred, no such purported transfers or assignments having been disclosed to him.

68.    As a direct and proximate result of that foreclosure sale, and the other wrongs of Defendants set forth above, Mr. Bojorquez has suffered undeserved damage to his credit rating injuring Mr. Bojorquez in an amount to be proven at trial to exceed $20,000.

69.    In or about April 2008, Mr. Bojorquez sought assistance at Legal Aid of Marin and continued to do everything in his limited power to seek legal redress for the foregoing events.

FIRST CAUSE OF ACTION
Violation of the Truth in Lending Act, 15 USC § 1601 *et seq.*, and
Federal Reserve Regulation Z, 12 CFR § 226 *et seq.*
Against Ownit and MERS

70.    Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

71.    One purpose of the Truth in Lending Act (TILA) is that all borrowers in the United States of America, prior to becoming obligated on an extension of consumer credit, must receive a meaningful disclosure of the credit terms so that the consumer will be readily able to compare the various credit terms available to him and avoid the uninformed use of credit.

72.    Each of Ownit and MERS violated said purpose by acting in concert with each other Defendant to arrange financing of the Property in a manner that Mr. Bojorquez became obligated on the purported mortgages to Ownit, MERS, and their

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

successors and assigns without first being able to compare the credit terms with alternatively available credit terms.

73.     TILA also required Ownit and MERS to make Mr. Bojorquez fully aware of the costs of the credit extended to him by or with the assistance of each such Defendant, and further required these Defendants to make Mr. Bojorquez fully aware of the interest rates, terms, and costs of the credit extended to him by or with the assistance of each such Defendant.

74.     Ownit and MERS each violated TILA by failing to inform Mr. Bojorquez that:  (a) he would be paying $11,110.85 in prepaid finance charges to obtain the First and Second Mortgage loans; (b) that the interest rate of the First Mortgage was variable; (c) that his payments would dramatically increase after two years; (d), that he would be required to pay an estimated $575,211 finance charge for the First Mortgage; and (e) that he would be required to pay an estimated $143,528 finance charge for the Second Mortgage, and also by failing to make all other disclosures required by TILA and Regulation Z.

75.     Any and all statutes of limitation relating to disclosures and notices required under TILA and Regulation Z were tolled due to the Defendants' failures to effectively or timely provide statutorily-required disclosures and notices and Plaintiff's consequent ignorance of the facts giving rise to this cause of action.

76.     Mr. Bojorquez has been damaged as a direct and proximate result of the foregoing violations in an amount to be proven at trial and not yet fully ascertained, including, without limitation, statutory damages and all amounts paid or to be paid in connection with each foregoing extensions of credit.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

77.     Defendants have been unjustly enriched by Plaintiffs at the expense of Plaintiffs, who are therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

SECOND CAUSE OF ACTION

Violation of the Real Estate Settlement Procedures Act, 12, USC § 2601m *et seq.*, Against all Defendants except DocMagic, Litton, Ocwen, Specialized, and Countrywide

78.     Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

79.     The purposes of the Real Estate Settlement Procedures Act ("RESPA") include, among other things, (a) to require more effective advance disclosure to home buyers of settlement costs, and (b) to eliminate kickbacks or referral fees that tend to increase unnecessarily the costs of financing homes.

80.     All Defendants violated RESPA and Regulation X by concealing and failing to disclose to Mr. Bojorquez:  the $6,640.00 purported loan origination fee paid to Realtycomp at closing; the $595.00 paid to Realtycomp at closing as a purported underwriting fee; the $300.00 paid to Ownit at closing as a purported administrative fee for what was, on information and belief, in substance, a loan from a consortium of mortgage securitization entities; the $25.00 paid to Ownit at closing as a purported wire fee;  the $55.00 paid to Ownit at closing as a purported funding fee; the $250.00 paid to Ownit at closing as a purported appraisal review fee; the $375.00 paid to Realtycomp at closing as a purported appraisal fee; the $1,500.00 paid to Realtycomp at closing as a purported "processing" fee; the $1,268.25 paid to Chicago Title at closing as a purported escrow fee; the $100.00 paid to "Service Provider" at closing as a purported "tie in" fee; the $30.00 paid

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

to "Service Provider" at closing as a purported notary fee; the $125.00 paid to "Service Provider" at closing as a purported recording/filing fee; the $482.50 paid to Chicago Title at closing as a title insurance fee; the $150.00 paid to "Service Provider" at closing as a purported document fee; the $75.00 paid to "Service Provider" at closing as a purported endorsement fee; or the $1452.50 paid as a City Transfer Tax. None of these charges were disclosed to Mr. Bojorquez by any Defendant prior to closing or at any time thereafter.

81. All Defendants failed to give Mr. Bojorquez the option of paying a lower amount of total fees up front by concealing these charges from him until long after he had incurred them.

82. On information and belief, Marin 1, Mortgage Services, Realtycomp, Mr. Buditaslim, and/or Ownit violated RESPA and Regulation X by Realtycomp's giving a portion of some of those sums to Ms. Gutierrez, Mortgage Services, and/or Marin 1 as a prohibited unearned or undisclosed fee and/or "kickback."

83. On information and belief, Ms. Gutierrez and Marin 1 violated RESPA by failing to disclose to Mr. Bojorquez that they received a commission as a result of Mr. Bojorquez's purchase of the Property.

84. On information and belief, Ms. Gutierrez, Mortgage Services, and/or Marin 1, violated RESPA by accepting a portion of the loan origination fees paid by Mr. Bojorquez to Realtycomp and/or other fees unwittingly paid by Mr. Bojorquez at closing.

85. Ownit, Realtycomp, and Chicago Title violated RESPA and Regulation X by charging Mr. Bojorquez the $6640 origination fee, the $595.00 underwriting fee; the $300.00 administrative fee, the $25.00 wire fee, the $55.00 funding fee, the $250.00 appraisal review fee, the $375.00 appraisal fee, the $1,500.00 "processing"

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

fee, the $1,268.25 escrow fee, the $100.00 "tie in" fee, the $30.00 notary fee, the $125.00 recording/filing fee, the $150.00 document fee, the $75.00 endorsement fee because those fees were excessive and undisclosed fees prohibited by RESPA.  Insofar as Ownit, Realtycomp, and Chicago Title might claim that those fees were reasonable because earned by procuring the loans for Mr. Bojorquez, those fees were not reasonable, and were excessive, because, on information and belief, Realtycomp failed to disclose to Ownit that Mr. Bojorquez did not have adequate income or credit to afford the loans Realtycomp procured as justification for those fees, and because Ownit either would have known, had it complied with Regulation B promulgated under the Equal Credit Opportunity Act, that Mr. Bojorquez could never have afforded those loans, or did know that he could never have afforded them, and that they were therefore predatory in nature.  The escrow fee charged by Chicago Title and other undisclosed fees charged by Chicago Title were unreasonable because Chicago Title procured Mr. Bojorquez's signatures on the documents causing him to pay those fees with actual and/or constructive knowledge that: (a) he could not understand English; (b) the documents were written in English; and (c) that the law required all those documents to be translated for him into Spanish in writing.   Ownit, Realtycomp, and Chicago Title therefore performed no service to Mr. Bojorquez entitling them to earn any fee, and instead performed a gross disservice to Mr. Bojorquez taking the very steps they claimed as justifying his paying them those undisclosed fees, and for that reason their charging him any fee at all would have been completely unearned and for that reason excessive.

86.     Ms. Gutierrez, Marin 1, Mortgage Services, Chicago Title, Realtycomp, and Mr. Buditaslim all violated RESPA and Regulation X by requiring Mr.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

31
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Bojorquez to purchase title insurance and escrow services from Chicago Title, a title insurer they had chosen for him without his consent, at a cost to Mr. Bojorquez of not less than $2230.75.

87.    Ownit and MERS violated RESPA by failing to inform Mr. Bojorquez that he could send the servicers of the First and Second Mortgage Loans, Ocwen, Litton, Countrywide, and Specialized, qualified written requests to initiate statutory rights belonging to Mr. Bojorquez under RESPA and Regulation X and enabling him to obtain corrections to his accounts.  Ownit also violated RESPA by failing to give Mr. Bojorquez notice that § 6 of RESPA provides for damages from those who violate its requirements.

88.    Ownit and MERS violated RESPA by concealing from Mr. Bojorquez that, in substance, Mr. Bojorquez was paying Ownit a fee for procuring the First and Second  Mortgage Loans for MERS.

89.    Insofar as Ms. Gutierrez, Realtycomp, Marin 1, Mortgage Services, and/or Mr. Buditaslim may have realized any advantage from their choice of Chicago Title as the provider of escrow services and title insurance, each such advantage constituted a prohibited unearned fee and/or "kickback" in violation of RESPA and Regulation X.

90.    Any and all statutes of limitation relating to disclosures and notices required under RESPA and Regulation X were tolled due to the Defendants' failures to effectively or timely provide statutorily-required disclosures and notices in a manner that could have been understood by Plaintiff, or in any manner whatever, and Plaintiff's consequent ignorance of the facts giving rise to this cause of action until less than two years prior to the filing of this compliant.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

91.     Pursuant to 12 USC §§ 2607 (d) and 2608(b), Mr. Bojorquez is entitled to recover from Defendants an amount equal to three times the amount of any and all charges for all "settlement services" paid directly or indirectly by Mr. Bojorquez, including but not limited to those described above, as well as actual damages, court costs, attorneys' fees, and any other amounts or damages permissible under RESPA.

THIRD CAUSE OF ACTION
Violation of Civil Code § 1632
Against All Defendants except Specialized, Litton, Countrywide, and Ocwen

92.     Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

93.     Each Defendant except Specialized, Litton, Countrywide, and Ocwen violated the Spanish Language Contract Act (Cal. Civ. Code §1632) when they and their agents conducted the negotiations with Mr. Bojorquez for the Purchase Contract, the purchase of the Property, the First Mortgage, the Second Mortgage, and the Title Policy entirely in Spanish, but failed to provide Spanish-language versions of those purported contracts to Mr. Bojorquez for his review prior to or after his execution of those contracts. In addition, they failed to provide translations, either verbal or in writing, of the disclosures required by TILA, RESPA and Regulations Z and X promulgated pursuant thereto.

94.     Mr. Bojorquez is entitled to rescission of the Purchase Contract, his purchase of the Property, his purchase of the Title Policy, the First Mortgage Loan, and the Second Mortgage Loan.

95.     Mr. Bojorquez is entitled to the return of all fees, interest, and other sums he has paid to any of Defendants, a total to be proven at trial to exceed $85,772.00.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

96.     Because Defendants' violations of the Spanish Language Contract Act were intentional, oppressive, fraudulent, and malicious, Mr. Bojorquez is entitled to exemplary damages in an amount to be proven at trial to be between $171,544.00 and $771,948.00, inclusive.

97.     By service of this complaint, Mr. Bojorquez notifies Defendants of his rescission of the purchase of the Property and First and Second Mortgage loans, and offers to restore Defendants to all consideration given directly to him under all relevant purchase and loan instruments upon his being restored to the consideration he has given under them

FOURTH CAUSE OF ACTION
Constructive Fraud
Against Ms. Gutierrez, Marin 1, Mortgage Services,
Realtycomp, and Mr. Buditaslim

98.     Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

99.     Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim each represented Mr. Bojorquez in the purchase transaction and/or the first and Second Mortgage Transactions as his agent.  As such, each of Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim each owed Mr. Bojorquez a fiduciary duty, under California Financial Code § 4979.5, the general law of agency, and otherwise.

100.    As the fiduciaries of Mr. Bojorquez, Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim each owed him the duty of the highest good faith and undivided loyalty and service in his behalf.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

34
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

101.     Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim each breached that duty by failing and refusing to disclose to him:  (a) the terms of the Purchase Contract; (b) the terms of the First Mortgage Loan; (c) the terms of the Second Mortgage Loan; (d) that the terms of the First and Second Mortgage Loans were less favorable than those in the Purchase Contract; (e) that he should have offered less money for the Property; (f) that they were all collecting fees from his attempting to purchase the Property; (g) that there was absolutely no possibility that he would successfully purchase the Property; (h) that they had falsified his loan application; (i) that he had a right to shop for loans, title insurance, and escrow services; (j) that he could easily back out of the transaction when he expressed his wish to do so; (k) that Marin 1 went on record as representing Mr. Bojorquez in the transaction, rather than Ms. Gutierrez as Defendants pretended; and (l) otherwise capitalizing on his limited literacy, old age, lack of experience, and foreign nationality as alleged elsewhere in this Complaint.

102.     Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim each realized financial and professional advantages from the foregoing breaches of the fiduciary duties to Mr. Bojorquez.

103.     Mr. Bojorquez justifiably relied upon the instructions and acts of Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim, as he had the right to do given their status as:  (a) real estate professionals assisting him; and (b) his actual and/or ostensible agents.

104.     Mr. Bojorquez has been injured by all the forgoing breaches in that Mr. Bojorquez unjustly incurred debt to Ownit and its successors and assigns that he could not afford to repay, in that he paid undisclosed fees of $13,368.00 at closing, in that he paid

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

35
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

interest of $54,326.00 on the First and Second Mortgages, in that his credit rating was

damaged at a cost to him in an amount to be proven at trial to exceed $20,000, in that he has

paid taxes in an amount exceeding $6500, and in that he would have suffered none of these

financial injuries had Defendants not breached their fiduciary duties to him.   His total

financial injury from such breaches will be proven at trial to exceed $94,194.00.

105.     Because Defendants' conduct was oppressive, fraudulent, and

malicious, Mr. Bojorquez is entitled to exemplary damages in an amount to be proven at

trial to be between $182,388 and $820,726.00, inclusive.

FIFTH CAUSE OF ACTION
Equitable Rescission
Against All Defendants

106.     Mr. Bojorquez restates and realleges each and every paragraph of this

Complaint going before or after this cause of action as if fully restated herein and

incorporates them by this reference.

107.     As detailed in the foregoing paragraphs 23-25, 30-37, 40-43, 45-50,

52-57, and 61, the sale of the Property to Mr. Bojorquez was accomplished by means of

constructive fraud, actual fraud, deceit, duress, and coercion.

108.     Mr. Bojorquez is entitled to rescission of sale of the Property to him

because it was accomplished by constructive fraud, actual fraud, deceit, duress, and

coercion, and against his expressed desires, and due to the failure of Defendants to deliver

to him the Property and mortgage loans on the terms he had been verbally and otherwise

promised.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

36
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

109.     As detailed in the foregoing paragraphs 23-25, 30-37, 40-43, 45-50, 52-57, and 61, the First and Second Mortgage Loans were procured by means of constructive fraud, actual fraud, deceit, duress, and coercion.

110.     Mr. Bojorquez is entitled to rescission of the First and Second Mortgage Loans due to their procurement by constructive fraud, actual fraud, deceit, duress, and coercion, and due to the failure of Defendants to deliver to him the Property and mortgage loans on the terms he had been verbally promised.

111.     Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr. Buditaslim, Ownit, and Chicago Title procured large fees from Mr. Bojorquez's unwilling purchase of the Property, and the making of the First and Second Mortgage Loans.  They procured those large fees by fraud, deceit, and statutory violation.

112.     Mr. Bojorquez is entitled to recovery of all payment he made to any Defendant as a result of his purchase of the Property, all payments he made on the First and Second Mortgage loans, and all fees taken by Ms. Gutierrez, Marin 1, Realtycomp, Mr. Buditaslim, Ownit, Ms. Bounville, and Chicago Title for procuring those loans.

113.     By service of this complaint, Mr. Bojorquez notifies Defendants of his rescission of the purchase of the Property and First and Second Mortgage loans, and offers to restore Defendants to all consideration he has actually and directly received under all relevant purchase and loan instruments upon his being restored to the consideration he has given under them.

114.     Plaintiff is willing to do equity as this case may require.

115.     Unless the purchase of the Property, the First and Second Mortgage loans, and the payment of the fees taken by Ms. Gutierrez, Marin 1, Mortgage Services,

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

37
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Realtycomp, Mr. Buditaslim, Ownit, Ms. Bounville, and Chicago Title for procuring those loans, are all rescinded, Mr. Bojorquez will suffer damages in the amounts described in this complaint.

116.    Unless the purchase of the Property, the First and Second Mortgage loans, and the payment of the fees taken by Ms. Gutierrez, Marin 1, Realtycomp, Mr. Buditaslim, Ownit, Ms. Bounville, and Chicago Title for procuring those loans, are all rescinded, those Defendants will remain unjustly enriched at Mr. Bojorquez's expense.

SIXTH CAUSE OF ACTION
Fraud
Against Ms. Gutierrez, Mr. Gutierrez, and Marin1

117.    Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

118.    Ms. Gutierrez and Marin 1 represented to Mr. Bojorquez that:  (a) the purchase price of the Property approximated its fair market value; (b) it was necessary to pay more than the asking price in order to procure the Property; (c) Mr. Bojorquez's payments would not substantially exceed $2000 per month; (d) such payments would be applied not only to interest but to principal owed for the purchase of the Property; (e) if he decided not to purchase the Property, the seller could take legal action against him for failing to do so; (f) that Ms. Gutierrez would suffer financial injury if he failed to purchase the Property; (g) that she had given his true financial information to the prospective lenders; (h) that Ms. Gutierrez, and not Marin 1, was his agent in the purchase transaction; and (i) that Ms. Gutierrez, and not Marin 1, Mortgage Services, Realtycomp, or Mr. Buditaslim, was his agent in the loan transactions.  Mr. Gutierrez represented to Mr. Bojorquez that, if

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

he purchased the property in the manner urged by Ms. Gutierrez, Mr. Bojorquez would make $40,000 in the following two years.

119.    Mr. Bojorquez relied upon those representations when allowing himself to be persuaded and coerced to sign the documents causing his indebtedness to Ownit and its successors and assigns, and when allowing himself to be persuaded to continue making payments to Ownit and its successors and assigns over a period of not less than two years.

120.    In making those representations, Ms. Gutierrez, Mr. Gutierrez, and Marin 1 intended to induce Mr. Bojorquez to execute the documents for the purchase of the Property and the First and Second Mortgages.

121.    In fact:  (a) the actual fair market value of the Property at the time of purchase was not more than $375,000.00; (b) there were no other parties interested in purchasing the Property for the asking price of $390,000,and the seller would have quickly agreed to sell the Property to Mr. Bojorquez for the asking price; (c) $3000 per month payments would not have been sufficient to make monthly principal and interest payments under any loan program Ms. Gutierrez or Marin 1 could make available to Mr. Bojorquez; (d) the payments Mr. Bojorquez would have to make would be interest-only payments that ballooned after two years to exceed $3000 per month; (e) Mr. Bojorquez had no duty consummate the purchase if he did not wish to because the financing specified in the Purchase Agreement was not available to him; (f) neither Ms. Gutierrez nor Marin 1 would have suffered any adverse effects from his not purchasing the Property other than not unjustly profiting from the financial disaster the purchase was sure to cause Mr. Bojorquez, and they both had a fiduciary duty to assist him to back out of the Purchase Agreement due

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1    to the unavailability of the specified financing; (g) neither Ms. Gutierrez nor Marin 1 had

2    given truthful financial information concerning Mr. Bojorquez to the lenders; (h) Ms.

3    Gutierrez and arranged for Marin 1 and Realtycomp to represent Mr. Bojorquez in the

4    purchase and loan transactions; and (i) it was completely unreasonable to expect that Mr.

5    Bojorquez would realize any financial gain from purchasing the Property; and (j) it was

6    virtually certain that Mr. Bojorquez would realize severe financial losses if he purchased the

7

8    Property.

9         122.    When Ms. Gutierrez and Marin 1 represented to Mr. Bojorquez that:

10   (a) the purchase price of the Property approximated its fair market value; (b) it was

11   necessary to pay more than the asking price in order to procure the Property; (c) Mr.

12   Bojorquez's payments would not substantially exceed $2000 per month; (d) such payments

13   would be applied not only to interest but to principal owed for the purchase of the Property;

14   (e) if he decided not to purchase the Property, the seller could take legal action against him

15   for failing to do so; (f) that Ms. Gutierrez would suffer financial injury if he failed to

16   purchase the Property; (g) that she had given his true financial information to the

17   prospective lenders; (h) that Ms. Gutierrez, and not Marin 1, was his agent in the purchase

18   transaction; and (i) that Ms. Gutierrez, and not Marin 1, Mortgage Services, Realtycomp, or

19

20   Mr. Buditaslim, was his agent in the loan transactions, they  knew:  (a) the actual fair

21   market value of the Property at the time of purchase was not more than $375,000.00; (b)

22   there were no other parties interested in purchasing the Property for the asking price of

23   $390,000, and the seller would have quickly agreed to sell the Property to Mr. Bojorquez

24   for the asking price; (c) Mr. Bojorquez's initial monthly payments would be interest-only

25   payments and would still substantially exceed $2000 per month; (d) after two years, Mr.

26

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919   27

28

                                40
**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Bojorquez would be required to make payments substantially in excess of $3000 per month; (e) when Mr. Bojorquez had informed Ms. Gutierrez that he did not want to purchase the Property, he had no duty to do so because the financing specified in the Purchase Agreement was not available to him; (f) neither Ms. Gutierrez nor Marin 1 would have suffered any undue adverse effects from his not purchasing the Property other than not profiting from the financial disaster the purchase was sure to cause Mr. Bojorquez, and they both had a fiduciary duty to assist him to back out of the Purchase Agreement due to the unavailability of the specified financing; (g) neither Ms. Gutierrez nor Marin 1 had given truthful financial information concerning Mr. Bojorquez to the lenders; and (h) Ms. Gutierrez had arranged for Marin 1 and Realtycomp to represent Mr. Bojorquez in the purchase and loan transactions.

123.    When Mr. Gutierrez told Mr. Bojorquez he would make $40,000 if he purchased the property, Mr. Gutierrez knew to a virtual certainty that Mr. Bojorquez would suffer disastrous financial consequences if he purchased the Property and would make nothing, but suffer losses instead.

124.    Mr. Bojorquez has been injured by his reliance on Ms. Gutierrez, Mr. Gutierrez, and Marin 1's forgoing false representations in that Mr. Bojorquez unjustly incurred debt to Ownit and its successors and assigns that he could not afford to repay, in that he paid undisclosed fees of $13,368.00 at closing, in that he paid interest of $54,326.00 on the First and Second Mortgages, in that his credit rating was damaged at a cost to him in an amount to be proven at trial to exceed $20,000, in that he has paid taxes in an amount exceeding $6500, and in that he would have suffered none of these financial injuries had

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

41
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Defendants not breached their fiduciary duties to him.   His total financial injury from such breaches will be proven at trial to exceed $94,194.00.

125.    Because Defendants' conduct was oppressive, fraudulent, and malicious, Mr. Bojorquez is entitled to exemplary damages in an amount to be proven at trial to be between $1782,388.00 and $820,746.00, inclusive.

SEVENTH CAUSE OF ACTION
Deceit
Against Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp,
Mr. Buditaslim, Ownit, Ms. Bounville, and Chicago Title

126.    Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

127.    Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim each owed Mr. Bojorquez a fiduciary duty.  Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr. Buditaslim, Ownit, Ms. Bounville, and Chicago Title each owed Mr. Bojorquez a duty to make all disclosures required by TILA and RESPA, as well as their respective professional duties to inform Mr. Bojorquez of all matters of foreseeable concern to him.  Each of the foregoing Defendants owed Mr. Bojorquez a general duty to not cause him foreseeable harm.

128.    Each of those Defendants deceived Mr. Bojorquez by suppressing the following facts:  (a) the interest rate of the First Mortgage was variable; (b) his payments would dramatically increase after two years; (c), he would be required to pay an estimated $575,211 finance charge for the First Mortgage; (d) he would be required to pay an estimated $143,528 finance charge for the Second Mortgage; (e) he was borrowing money to pay the $6,640.00 purported loan origination fee to Realtycomp; (f) he was borrowing

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

money to pay the $595.00 purported underwriting fee to Realtycomp; (g) he was borrowing

money to pay the $300.00 purported administrative fee to Ownit; (h) he was borrowing

money to pay the $25.00 purported wire fee to Ownit; (i) he was borrowing money to pay

the $55.00 purported funding fee to Ownit; (j) he was borrowing money to pay the $250.00

purported appraisal review fee to Ownit; (k) he was borrowing money to pay the $375.00

purported appraisal fee to Realtycomp; (l) he was borrowing money to pay the $1,500.00

purported "processing" fee to Realtycomp; (m) he was borrowing money to pay the

$1,268.25 purported escrow fee to Chicago Title; (n) he was borrowing money to pay the

$100.00 purported "tie in" fee "Service Provider;" (o) he was borrowing money to pay the

$30.00 purported notary fee to "Service Provider;" (p) he was borrowing money to pay the

$125.00 purported recording/filing fee to "Service Provider;" (q) he was borrowing money

to pay the $482.50 title insurance fee to Chicago Title; (r) he was borrowing money to pay

the $150.00 purported document fee to "Service Provider;" (s) he was borrowing money to

pay the $75.00 purported endorsement fee to "Service Provider;" or (t) he was borrowing

money to pay  the $1452.50 City Transfer Tax.

        129.     Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr.

Buditaslim, Ownit, Ms. Bounville, and Chicago Title were each bound to disclose the

foregoing facts to Mr. Bojorquez.

        130.     Ms. Gutierrez and Marin 1 each gave to Mr. Bojorquez information

that was likely to mislead him for want of communication of the foregoing facts.

        131.     Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr.

Buditaslim, Ownit, Chicago Title, and, on information and belief, Ms. Bounville

intentionally refrained from bringing those facts to Mr. Bojorquez's attention in order to

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

induce him to execute the purchase and loan documents, so that they could profit by his ignorance.

132.    Mr. Bojorquez relied on his lack of knowledge of those matters when allowing himself to be persuaded and pressured into executing the purchase and loan documents.

133.    Mr. Bojorquez has been injured by that reliance in that Mr. Bojorquez unjustly incurred debt to Ownit and its successors and assigns that he could not afford to repay, in that he paid undisclosed fees of $13,368.00 at closing, in that he paid interest of $54,326.00 on the First and Second Mortgages, in that his credit rating was damaged at a cost to him in an amount to be proven at trial to exceed $20,000, in that he has paid taxes in an amount exceeding $6500, and in that he would have suffered none of these financial injuries had Defendants not breached their fiduciary duties to him.   His total financial injury from such breaches will be proven at trial to exceed $94,194.00.

134.    Because Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim's conduct was oppressive, fraudulent, and malicious, Mr. Bojorquez is entitled to exemplary damages from those five Defendants in an amount to be proven at trial to be between $182,388.00 and $820,746.00, inclusive.

EIGHTH CAUSE OF ACTION
Violation of the FCRA (15 USC 1681, *et seq*.)
Against Marin 1, Mortgage Services, Ownit, MERS, Ocwen, Litton,
Specialized, and Countrywide

135.    Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

44
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

136.     The FCRA and the FDIC Regulations promulgated thereunder at 12 CFR 334.1, *et seq*. ("the FDIC Regulations") required Ownit, MERS, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim to provide Mr. Bojorquez not only the credit reports they obtained and considered in making the First and Second Mortgage Loans, but also actual notice to him that generally described credit scores, their use, and the sources and kinds of data used to generate credit scores.  FCRA and the FDIC Regulations prohibited affiliates of Ownit, Ocwen, Countrywide, Litton, and Specialized from using the information provided to them as a result of the purchase and loan transactions to send solicitations to Mr. Bojorquez for marketing purposes.  FCRA  and the FDIC Regulations prohibited Ownit from providing the First and Second Mortgages until Mr. Bojorquez had made an actual and informed choice, as a result of a "clear and conspicuous" communication "reasonably understandable" to him regarding whether or not he opted out of the furnishing by Ownit, Ocwen, Countrywide, Litton, and Specialized, to each other or to others, of their use of eligibility information they procured as a result of the applications for those Mortgages that Plaintiff believes were made on his behalf.

137.     Ownit, MERS, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim violated FCRA by failing to provide Mr. Bojorquez either the credit reports they obtained and considered in making the First and Second Mortgage Loans or actual notice to him that generally described credit scores, their use, and the sources and kinds of data used to generate credit scores.

138.     Had Ownit, MERS, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim  not violated FCRA in that manner, Mr. Bojorquez would have understood

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

that he had poor credit, and that he risked damage to it by attempting the purchase of the Property, and he would not have purchased the Property.

139.    Ocwen, Countrywide, Litton, and Specialized, violated FCRA and the FDIC Regulations by using the information concerning Mr. Bojorquez to send solicitations to Mr. Bojorquez for marketing purposes.

140.    Had Ownit, Ocwen, Countrywide, Litton, and Specialized not violated FCRA in that manner, Mr. Bojorquez would have not received numerous letters appearing to relate to his duties to pay the First and Second Mortgage that he had to get translated to understand at the expense of his time and resources only to find that they were affiliate solicitations of the type prohibited by FCRA.

141.    Based on Mr. Bojorquez's low credit scores and the terms of the First and Second Mortgage Loans, he alleges on information and belief that Ownit and MERS took adverse action against him in that they charged him higher loan fees and higher interest rates for the First and Second Mortgage Loans, and required those rates to be variable rather than fixed, all based on his low credit scores.

142.    Ownit and MERS violated FCRA by failing to inform Mr. Bojorquez of the foregoing adverse action.

143.    Had Ownit or MERS informed Mr. Bojorquez of the foregoing adverse action, he would have discovered that the First and Second Mortgages:  (a) were interest-only; (b) were not fixed-rate; (c) were not fully amortized; (d) would cost substantially more than $2000/month to service on an interest-only basis, and (e) were certainly impossible for him to afford, he would not have purchased the Property.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

144.    Mr. Bojorquez is informed and believes that, to the extent the foregoing violations of FCRA were not intentional, they were negligent.

145.    As a direct and proximate result of Defendants' foregoing violations of FCRA and the FDIC Regulations:  (a) Mr. Bojorquez's monthly payments were higher than promised and escalated after two years, causing his loss of the Property in early 2008; (b) Mr. Bojorquez paid approximately $8,000 more than he was promised he would have to pay; (c) Mr. Bojorquez's credit ratings were damaged at a cost to him in an amount to be proven at trial to exceed $20,000; and (d) Mr. Bojorquez did not inform Ownit, MERS, and their servicing agents that he did not wish them to provide information to their affiliates, and they then referred his credit information numerous times to their affiliates, causing him to be deluged with offers he did not understand, at a loss of approximately $10,000.

146.    Mr. Bojorquez is entitled to recover his costs of suit and reasonable attorneys fees pursuant to 15 USC § 1681o.

147.    To the extent Ownit's failure to make required disclosures to Mr. Bojorquez were intentional, he is entitled to $1000 for each instance that Ownit, MERS, Litton, Ocwen, Specialized, of Countrywide provided his credit information to a third person, and punitive damages pursuant to 15 USC § 1681n.

NINTH CAUSE OF ACTION
Fair Housing Act, 42 USC § 301, *et seq.*
Against All Defendants

148.    Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

149.    Mr. Bojorquez purchased the property for use as his own dwelling and he did dwell there upon purchasing it and until he lost the right to do so due to the matters complained of herein.

150.    The Defendant members of the Lending and Servicing Conspiracy conspired to discriminate against Mr. Bojorquez on the basis of his race and national origin in the terms, conditions, and privileges of the sale and financing of the Property to him in the manner described in the foregoing ¶ 23 of this Complaint.

151.    All Defendants discriminated against Mr. Bojorquez on the basis of his race and national origin in the terms, conditions, and privileges of the sale and financing of the Property to him by engaging in the conduct complained of in the foregoing and following paragraphs of this Complaint, including, but not limited to, their using his inability to speak English to deny him:  (a) actual disclosure of things required to be disclosed to him by TILA; (b) actual disclosure of things required to be disclosed to him by RESPA; (c) actual disclosure of things required to be disclosed to him by ECOA; (d) actual disclosure of things required to be disclosed to him by FCRA;  (e) knowledge of the terms of the Purchase Contract; (f) virtually all knowledge of the terms of the First and Second Mortgage; (g) knowledge that the interest rate of the First Mortgage was variable; (h) knowledge that his payments would dramatically increase after two years; (i), knowledge that he would be required to pay an estimated $575,211 finance charge for the First Mortgage; (j) knowledge that he would be required to pay an estimated $143,528 finance charge for the Second Mortgage; and (i) knowledge that it was financially impossible for him to purchase the Property.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

152.   Defendants made, caused to be made, and/or permitted notices and statements indicating a preference for persons of non-Spanish-speaking ancestry and national origin by engaging in the conduct complained of in the foregoing and following paragraphs of this Complaint, including, but not limited to, their using his inability to speak English to deny him:  (a) actual disclosure of things required to be disclosed to him by TILA; (b) actual disclosure of things required to be disclosed to him by RESPA; (c) actual disclosure of things required to be disclosed to him by ECOA; (d) actual disclosure of things required to be disclosed to him by FCRA;  (e) knowledge of the terms of the Purchase Contract; (f) virtually all knowledge of the terms of the First and Second Mortgage; (g) knowledge that the interest rate of the First Mortgage was variable; (h) knowledge that his payments would dramatically increase after two years; (i), knowledge that he would be required to pay an estimated $575,211 finance charge for the First Mortgage; (j) knowledge that he would be required to pay an estimated $143,528 finance charge for the Second Mortgage; and (i) knowledge that it was financially impossible for him to purchase the Property.

153.   On information and belief, each Defendant, individually, and as a part of a joint enterprise for that purpose, intended to discriminate against him on the basis of his foreign nationality and resulting inability to speak English, and  continued to engage in the foregoing discriminatory activities from the times of the acts complained of herein until a time not earlier than two years prior to the filing of this complaint.

154.   To the extent any Defendant may have ceased to engage in the foregoing discriminatory activities earlier than two years prior to the filing of this Complaint, which Mr. Bojorquez alleges on information and belief they did not, the

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

49
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

applicable statute of limitation was tolled for several reasons, including, without limitation, Mr. Bojorquez's inability to read or understand the relevant documents, Defendants' failure and refusal to provide documents in a language he could understand and other acts of concealment, and his consequent unawareness of the matters complained of herein until a date less than two years prior to the filing of the Complaint.

155.    Mr. Bojorquez has suffered damages from Defendants' violations of the Fair Housing Act in an amount that is very difficult to determine but that will be proven at trial to exceed $1,000,000.00.

156.    Pursuant to 42 USC § 3613(c), Mr. Bojorquez is entitled to his actual damages of $1,000,000.00, punitive damages of between $2,000,000.00 and $9,000,000.00, inclusive, costs of suit, and his reasonable attorneys' fees.

TENTH CAUSE OF ACTION
Predatory Lending
Against Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp,
Mr. Buditaslim, Ownit, and MERS

157.    Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

158.    Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim, each owed Mr. Bojorquez a fiduciary duty, under California Financial Code § 4979.5 and otherwise, and other duties, not to require him to pay large fees to procure the First and Second Mortgages, and the large payments required by that Loan, because they each actually knew, and should have known, that Mr. Bojorquez could not pay that loan, the minimum payments of which were more than 100% of his gross annual salary, yet callously

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

foisted that loan upon Mr. Bojorquez to gain significant transaction fees and commissions at his expense.

159.     On information and belief, Ownit, and MERS each intentionally marketed mortgage loans to Spanish-speaking homebuyers in California intending to induce them to execute mortgage loans using their homes as collateral, and intending to gain advantages over their Spanish-speaking borrowers by executing the loan agreements in English only, despite the requirements of Cal. Civil Code § 1632, and arranging for the enforcement of the mortgage rights so obtained using the written bi-lingual English/Spanish communications that law required them to also use when negotiating the mortgage loans. For those and other reasons, Mr. Bojorquez contends that they should be equitably subject to liability for predatory lending to the same extent as if they had fiduciary duties to their borrowers, such as Mr. Bojorquez.

160.     Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr. Buditaslim, Ownit, and MERS all knew that Mr. Bojorquez would certainly be damaged by entering into the First and Second Mortgage Loans, and also knew that they stood to benefit financially from his doing so, and therefore made those loans to Mr. Bojorquez in order to intentionally prey upon his inability to pay those loans, for their gain, and his loss.

161.     Mr. Bojorquez has been injured by the predatory lending practices of Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr. Buditaslim, Ownit, and MERS in that he paid undisclosed fees of $13,368.00 at closing, in that he paid interest of $54,326.00 on the First and Second Mortgages, that his credit rating was damaged at a cost to him in an amount to be proven at trial to exceed $20,000, in that he has paid taxes in an amount exceeding $6500, and in that he would have suffered none of these financial injuries

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1    had Defendants not breached their fiduciary duties to him. His total financial injury from

2    such breaches will be proven at trial to exceed $94,194.00.

3         162.    Because Ms. Gutierrez's conduct was oppressive, fraudulent, and

4    malicious, Mr. Bojorquez is entitled to exemplary damages from her in an amount to be

5    proven at trial to be between $182,388.00 and $820,746.00, inclusive.

6

7                          ELEVENTH CAUSE OF ACTION
                                   Negligence
8                            Against all Defendants

9         163.    Mr. Bojorquez restates and realleges each and every paragraph of this

10   Complaint going before or after this cause of action as if fully restated herein and

11   incorporates them by this reference.

12        164.    Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr.

13   Buditaslim, Chicago Title, and Ms. Bounville each had a duty to take reasonable steps to

14   inform Mr. Bojorquez of all terms of the purchase and financing of the Property they

15   arranged for him and to inform him of all such terms at a time in advance of the purchase so

16   that he could examine those terms and make an informed decision whether or not it was

17   worth it to him to purchase the property on those terms. Their respective duties included,

18   but were not limited to, the duty to treat Mr. Bojorquez with the standard of care of other

19   professionals within their respective areas of expertise and/or their respective statutory

20   fiduciary duties as real estate professionals.

21        165.    Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr.

22   Buditaslim, Chicago Title, and Ms. Bounville each breached that duty by arranging the

23   execution of the purchase and loan documents in a manner that would prevent Mr.

24   Bojorquez from knowing the terms of the purchase and loan transactions yet strongly

25

26

27

28

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

motivate him to sign them, and by failing to inform him of the actual terms of either of those transactions.  Those Defendants breached that duty by using Mr. Bojorquez's inability to read English to conceal from him:  (a) the terms of the purchase transaction; (b) the terms of the First Mortgage Loan transaction; (c) the terms of the Second Mortgage Loan transaction; (d) the amount he was to pay for finders', brokerage, loan fees; (e) the amount he was to pay for escrow fees; (f) the amount he was to pay for title insurance; (g) the monthly payments he would be required to make;  (h) that the interest on the loans exceeded his entire income even if he never paid a penny toward purchasing the Property they told him they were arranging for him to purchase; (i) that said interest could escalate to more than twice his entire income over the passage of time; and (j) the matters of which he was entitled to receive notice under TILA, RESPA, FCRA, and ECOA.  Chicago Title and Ms. Bounville each also breached that duty by failing to ascertain that Mr. Bojorquez's purported signature on a number of critical documents, such as the Deeds of Trust, were properly notarized prior to recordation.

166.    Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim each had a duty to use reasonable care not to cause foreseeable harm to Mr. Bojorquez, a duty to meet the minimum standards of their respective professions in the San Francisco Bay Area, a duty to give Mr. Bojorquez Spanish translations of the First and Second Mortgage Loan documentation pursuant to Civil Code § 1632, and a fiduciary duty to Mr. Bojorquez as his real estate agents and loan brokers.  These duties applied to all of their acts as loan brokers and/or real estate agents when procuring the First and Second Mortgage Loans and all aspects of their arranging the terms and logistics of Mr. Bojorquez's purchase of the Property.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

53
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

167.    Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim each breached those duties by failing to inform Mr. Bojorquez that he should not purchase the house at all, failing to inform him of the terms of the financing they procured for him, failing to inform him that they had, on information and belief, submitted false financial information to Ownit, failing to inform him of the fees they were paying themselves and each other with the financing they procured for him, and by arranging financing they actually knew, and should have known even without that actual knowledge, that Mr. Bojorquez could not possibly afford.

168.    Chicago Title and Ms. Bounville each owed a duty to Mr. Bojorquez to use due care in conducting his execution of the purchase, loan, and other closing documents.

169.    Chicago Title and Ms. Bounville each breached that duty by failing to take any step whatsoever to provide him oral or written translations of the statutorily-mandated disclosure documents they presented him at closing, or the purchase documents, or the loan documents, despite their actual and constructive knowledge that he could not read those documents and had received none of the statutorily-mandated disclosures. Chicago Title and Ms. Bounville each also breached that duty by failing to ascertain that Mr. Bojorquez's purported signature on a number of critical documents, such as the Deeds of Trust, were properly notarized prior to recordation.

170.    Ownit, MERS, DocMagic, Ocwen, Countrywide, Litton, and Specialized each had a duty to not knowingly inflict foreseeable harm upon Mr. Bojorquez, and a duty not to conspire to intentionally deprive non-English speaking mortgagees of their rights under TILA, RESPA, ECOA, FRCA, FDCPA, and FHA. A number of their actions

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

54
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

and inactions described in this Complaint combined to create a breach of that duty, including but not limited to:  (a) their failure to provide translations of the loan documents so that Mr. Bojorquez could understand them; (b) failing to ascertain that the loan transactions were not based on fraudulent information provided by loan brokers known by Ownit and MERS to have no incentive to provide accurate information and every incentive to provide fraudulent information; (c) selling their mortgage loan products through or with the aid of brokers such as the broker defendants in this action who had no moral hazard or accountability of any kind, and who Ownit and MERS knew or should have known had great incentive to sell their loans and no incentive whatever to do so in a legal or harmless manner; and (d) seeking to unfairly take advantage of Spanish-speaking borrowers, as evidenced by their use of Spanish-language collection documents and English-only loan documents.  Further, Ownit, the 11th largest subprime lender, knew that not checking to see if borrowers might be destroying their own finances by taking out loans (because it knew it could immediately resell them into mortgage securities pools) would injure many of its borrowers, but made those loans anyway to reap immediate profits from doing that harm. In the words of Ownit's Chief Executive Officer, William Dallas: "The market is paying me to do a no-income-verification loan more than it is paying me to do the full documentation loans. What would you do?"

171.    Mr. Bojorquez has been injured by the negligence of Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr. Buditaslim, DocMagic, Ownit, MERS, Specialized, Litton, Countrywide, Ocwen, Chicago Title, and Ms. Bounville in that he paid undisclosed fees of $13,368.00 at closing, in that he paid interest of $54,326.00 on the First and Second Mortgages, in that his credit rating was damaged at a cost to him in an amount

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

55
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

to be proven at trial to exceed $20,000, in that he has paid taxes in an amount exceeding $6500, and in that he would have suffered none of these financial injuries had Defendants not breached their fiduciary duties to him.   His total financial injury from such breaches will be proven at trial to exceed $94,194.00.

172.    All Defendants knew or should have known that such damage would likely result from the foregoing breaches.

173.    Each Defendant breached his, her, or its respective duties with oppression, fraud, and/or malice in that, among other things, they intended to profit by deceiving Mr. Bojorquez in a manner they knew would probably injure him, and by collecting undisclosed fees from Mr. Bojorquez at his expense and without his knowledge, and with the knowledge that the resulting losses would be borne by Mr. Bojorquez and the successors and assigns of Ownit, and otherwise capitalized on his limited literacy and foreign nationality.

174.    Because Defendants' conduct was oppressive, fraudulent, and/or malicious, except that of Chicago Title and Ms. Bounville, Mr. Bojorquez is entitled to exemplary damages from them in an amount to be proven at trial to be between $182,388.00 and $820,746.00, inclusive.

TWELFTH CAUSE OF ACTION
Negligence <em>per se</em>
Against all Defendants except Litton, Ocwen, Countrywide, and Specialized

175.    Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

176.     By engaging in the foregoing acts and omissions that injured Mr. Bojorquez, all Defendants except Litton and Specialized violated all/or some of the following statutes:  (a) TILA; (b) RESPA, (c) the Equal Credit Opportunity Act ("ECOA"), 15 USC §1691, *et seq*.; (d) FCRA; (e) The Fair Housing Act; (f) FDCPA; and (g) California Civil Code §1632.  In addition, Ms. Gutierrez, Marin 1, Realtycomp, and Mr. Buditaslim violated the following statutes:  California Civil Code §§ 1572 and 1573; and California Civil Code §§ 1709 and 1710.

177.     Defendants' violations of each of the foregoing statutes proximately caused injury to Plaintiff in that he paid undisclosed fees of $13,368.00 at closing, in that he paid interest of $54,326.00 on the First and Second Mortgages, that his credit rating was damaged at a cost to him in an amount to be proven at trial to exceed $20,000, in that he has paid taxes in an amount exceeding $6500, and in that he would have suffered none of these financial injuries had Defendants not breached their fiduciary duties to him.   His total financial injury from such breaches will be proven at trial to exceed $94,194.00.

178.     The injury to Plaintiff proximately caused by Defendants' violations of the foregoing statutes was the injury those statutes were enacted to prevent.

179.     Plaintiff is a member of the classes of persons the foregoing statutes were enacted to protect.

180.     Because Defendants' violations of the foregoing statutes were oppressive, fraudulent, and malicious, Mr. Bojorquez is entitled to exemplary damages from those Defendants in an amount to be proven at trial to be between $182,388.00 and $820,746.00, inclusive.

THIRTEENTH CAUSE OF ACTION
Breach of Fiduciary Duty
Against Ms. Gutierrez, Realtycomp, Marin 1,

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

57
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Mortgage Services, and Mr. Buditaslim

181. Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

182. As persons providing brokerage services to a borrower, and by soliciting lenders or otherwise negotiating the First and Second Mortgage, Ms. Gutierrez, Realtycomp, Mr. Buditaslim, Marin 1, and Mortgage Services were acting as the fiduciaries of Mr. Bojorquez.

183. As such they had a duty to protect Mr. Bojorquez from unnecessary loss and to place Mr. Bojorquez's interests over their own.

184. In engaging in the conduct set forth in this complaint, Ms. Gutierrez, Realtycomp, Marin 1, Mortgage Services, and Mr. Buditaslim all violated their respective fiduciary duties to Mr. Bojorquez.

185. As a result of each Defendant's violation of his or its fiduciary duty, Mr. Bojorquez has been injured in that he paid undisclosed fees of $13,368.00 at closing, in that he paid interest of $54,326.00 on the First and Second Mortgages, that his credit rating was damaged at a cost to him in an amount to be proven at trial to exceed $20,000, in that he has paid taxes in an amount exceeding $6500, and in that he would have suffered none of these financial injuries had Defendants not breached their fiduciary duties to him. His total financial injury from such breaches will be proven at trial to exceed $94,194.00.

186. Because Defendants' breaches of their fiduciary duties were in willful disregard of the well being of Plaintiffs, and because those breaches were

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

oppressive, fraudulent, and malicious, Mr. Bojorquez is entitled to exemplary damages in an amount to be proven at trial to be between $182,338.00 and $820,388.00, inclusive.

FOURTEENTH CAUSE OF ACTION
Equal Credit Opportunity Act 15 USC § 1691, *et seq.*
Against Ownit and MERS

187.    Mr. Bojorquez restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

188.    Pursuant to the Equal Credit Opportunity Act 15 USC § 1691, *et seq.,*("ECOA"), and Regulation B promulgated thereunder, 12 CFR § 202, Ownit and MERS were required:  (a) to take a written application from Mr. Bojorquez before extending the credit and alleged credit that is the subject of this action; (b) to provide Mr. Bojorquez a copy of the appraisal of the Property upon which the issuance of that credit was predicated, or else notify him in writing that they were required to do so upon his request; and (c) to notify him of the approval of his application for credit from the First and Second Mortgage Lenders.

189.    Ownit and MERS each violated ECOA by failing to take a written application from Mr. Bojorquez, by failing to either give him a copy of the appraisal or give him notification of his limited right to request one, and by failing to notify Mr. Bojorquez, in accurate terms and/or at all, of the approval of his application for credit.

190.    Had Mr. Bojorquez received a copy of an accurate appraisal, he would have been alerted to the low value of the property and would have known that the sale price of $415,000 was less than its fair market value, as represented by Defendants, and he would have not purchased the Property.  Had Mr. Bojorquez been required to complete a

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

59
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

written application for credit, neither the First nor Second Mortgage Lender would have extended the credit to him that is at issue in this action, and he would have been saved from the financial losses he complains of herein.  Had Defendants accurately informed Mr. Bojorquez of the terms of approval of the credit they procured, he would not have purchased the Property or accepted that credit.

191.    As a consequence of the foregoing violations of ECOA, Mr. Bojorquez did execute the purchase and loan documents and Mr. Bojorquez has therefore suffered financial injury in that he paid undisclosed fees of $13,368.00 at closing, in that he paid interest of $54,326.00 on the First and Second Mortgages, that his credit rating was damaged at a cost to him in an amount to be proven at trial to exceed $20,000, in that he has paid taxes in an amount exceeding $6500, and in that he would have suffered none of these financial injuries had Defendants not breached their fiduciary duties to him.   His total financial injury from such breaches will be proven at trial to exceed $94,194.00.

For the foregoing reasons, Mr. Bojorquez most respectfully requests this honorable Court to grant judgment in their favor and against Defendants, as follows:

a.   On his First Cause of Action, judgment against MERS and Ownit , jointly and severally, in an amount to be proven at trial to exceed $94,194.00, and for equitable restitution, and disgorgement of profits obtained by these Defendants;

b.   On his Second Cause of Action, judgment against all Defendants except DocMagic, Litton, Ocwen, Specialized, and Countrywide, jointly and severally, in the amount of $40,104.00;

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

c. On his Third Cause of Action, judgment against all Defendants except Litton, Ocwen, Specialized, and Countrywide, jointly and severally, in an amount to be proven at trial to exceed $94,194.00, and for punitive or exemplary damages of between $182,388 and $820,726, inclusive;

d. On his Fourth Cause of Action, judgment against Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, and Mr. Buditaslim, jointly and severally, in an amount to be proven at trial to exceed $94,194.00, and for punitive or exemplary damages of between $182,388 and $820,726, inclusive;

e. On his Fifth Cause of Action, for rescission of all transactions associated with his purchase of the Property and restitution to him of all amounts paid to all Defendants;

f. On his Sixth Cause of Action, judgment against Ms. Gutierrez, Mr. Gutierrez, and Marin 1, jointly and severally, in an amount to be proven at trial to exceed $94,194.00, and for punitive or exemplary damages of between $182,388 and $820,726, inclusive;

g. On his Seventh Cause of Action, judgment against Ms. Gutierrez, Marin 1, Mortgage Services, Realtycomp, Mr. Buditaslim, Ownit, Ms. Bounville, and Chicago Title, jointly and severally, in an amount to be proven at trial to exceed $94,194.00, and for punitive or exemplary damages of between $182,388 and $820,726, inclusive;

h. On his Eighth Cause of Action, judgment against Ownit, MERS, Marin 1, Mortgage Services, Ocwen, Litton, Specialized, and Countrywide,

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

jointly and severally, in the varying amounts indicated in that cause of

action, each such amount to be proven at trial, to be at least $10,000,

some to be proven to exceed $48,000;

i.   On his Ninth Cause of Action, judgment against each Defendant, jointly

and severally, in the amount of $1,000,000.00, and for punitive or

exemplary damages of between $2,000,000.00 and $9,000,000.00,

inclusive;

j.   On his Tenth Cause of Action, judgment against Ms. Gutierrez, Marin 1,

Realtycomp, Mr. Buditaslim, Ownit, and MERS, jointly and severally, in

an amount to be proven at trial to exceed $94,194.00, and for punitive or

exemplary damages of between $182,388 and $820,726, inclusive;

k.   On his Eleventh Cause of Action, judgment against all Defendants,

jointly and severally, in an amount to be proven at trial to exceed

$94,194.00, and for punitive or exemplary damages of between $182,388

and $820,726, inclusive;

l.   On his Twelfth Cause of Action, judgment against all Defendants except

Litton, Ocwen, Countrywide, and Specialized, jointly and severally, in an

amount to be proven at trial to exceed $94,194.00, and for punitive or

exemplary damages of between $182,388 and $820,726, inclusive;

m.  On his Thirteenth Cause of Action, judgment against Ms. Gutierrez,

Realtycomp, Marin 1, Mortgage Services, and Mr. Buditaslim, jointly

and severally, in an amount to be proven at trial to exceed $94,194.00,

ANTONIO L. CORTÉS
528 WISTERIA WAY
SAN RAFAEL, CA 94903
(415) 256-1911
FAX: (415) 256-1919

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

and for punitive or exemplary damages of between $182,388 and

$820,726, inclusive;

    n.  On his Thirteenth Cause of Action, judgment against Ownit and MERS,

jointly and severally, in an amount to be proven at trial to exceed

$94,194.00, and for punitive or exemplary damages of between $182,388

and $820,726, inclusive;

    o.  For interest on all of the foregoing amounts at the statutory rate;

    p.  For Plaintiff's reasonable attorneys fees;

    q.  For costs of suit; and

    r.  For such other and further relief as the court may deem just and proper.

DATED:  December 13, 2009

_____/s/_____
Antonio L. Cortes,
Counsel for Plaintiff

**PLAINTIFF DEMANDS A JURY TRIAL.**

DATED:  December 13, 2009

_____/s/_____
Antonio L. Cortes,
Counsel for Plaintiff