IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WENCESLAO BOJORQUEZ,

    Plaintiff,

v.

MARTHA GUTIERREZ, et al.,

    Defendants.

No. C 09-03684 SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

Defendants Ocwen Loan Servicing, Specialized Loan Servicing, Martha Gutierrez, and Marin 1 Real Estate have filed motions to dismiss plaintiff's first amended complaint. The Court took this matter under submission. Having considered the papers submitted, and for good cause shown, the Court hereby rules as follows.

## BACKGROUND

Plaintiff filed this case on August 12, 2009, naming numerous defendants and alleging fourteen causes of action related to the purchase of real property in May 2005.[1] Shortly thereafter, various defendants filed motions to dismiss the complaint pursuant to Rule 12(b)(6), and plaintiff subsequently filed a First Amended Complaint ("FAC" or "amended complaint") on December 16, 2009. In the matter now before the Court, defendants again move for dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, and on the additional ground that some of plaintiff's claims

---

[1] The action was dismissed as to four defendants and settlement negotiations are ongoing between plaintiff and defendant Litton Loan Servicing. Several defendants have not appeared and may not have been served.

are time-barred. The moving defendants are Martha Gutierrez, a licensed real estate agent employed by Marin 1 Real Estate, Inc. ("Marin 1"); Ocwen Loan Servicing, LLC ("Ocwen"); and Specialized Loan Servicing, LLC ("Specialized"). Ocwen and Specialized are referred to collectively in this order as the "loan servicing defendants."

This case arises out of events leading up to plaintiff's purchase of a home in the spring of 2005, and the eventual foreclosure and resale of that home in March 2008. Plaintiff alleges that he can neither speak nor read English and is only marginally literate in Spanish, and alleges that all defendants are aware of this fact. FAC ¶¶ 21, 22. Plaintiff dealt primarily with defendant Gutierrez, an agent of defendant Marin 1 who often works with Spanish-speaking clients. *Id.* ¶¶ 3, 5, 24, 27-28. Plaintiff alleges that Gutierrez never disclosed the existence of other entities involved in the transaction. *Id.* ¶ 37. All oral communication with Gutierrez was in Spanish, but all documentation presented by Gutierrez was written in English. *Id.* ¶¶ 36, 39, 44. Plaintiff alleges that he therefore relied on Gutierrez to translate the terms of any documentation related to the transaction. *Id.* ¶¶ 103, 113, 132. Of the fourteen causes of action alleged in his complaint, all but the first and the fourteenth are alleged against Gutierrez. Plaintiff's allegations concerning his interaction with Gutierrez are as follows.

## I. Allegations Against Defendants Gutierrez and Marin 1

Plaintiff alleges that in early 2005 he was solicited by Gutierrez to purchase a home. *Id.* ¶ 27. Initially, plaintiff dismissed the possibility of purchasing a home because he believed that "he lacked money or credit to purchase any real property." *Id.* However, with some persistence, Gutierrez convinced plaintiff to at least consider purchasing a home. *Id.* ¶ 28 Gutierrez visited plaintiff's apartment in February 2005, and plaintiff provided her with financial information necessary to complete loan applications on his behalf *Id.* When Gutierrez notified plaintiff that the loans had been approved plaintiff refused to sign the documents because he doubted his ability to afford such a large purchase. *Id.* ¶ 29. According to plaintiff, Gutierrez continued her attempts to persuade plaintiff that he could afford a home, stating that he "would never pay much more than $2000 per month" and that he could rent rooms to tenants which Gutierrez would "personally provide . . . for at least $1200 per month." *Id.* ¶30. Plaintiff again refused to sign the documents. *Id.*

Plaintiff alleges that Gutierrez continued to pressure him to change his mind by phoning him, his roommate, and his daughter up to five times daily over the course of two weeks. *Id.* Plaintiff states that he eventually "succumbed to that barrage" and signed the loan documents based upon Gutierrez's assurances that he was indeed in a financial position to purchase a home, that he would make money on the transaction by renting out rooms in the house, and that she would help him find tenants. *Id.* ¶¶ 30, 31, 42. According to plaintiff, Gutierrez also made statements which gave plaintiff the impression that he was legally obligated to follow through with loans once they were approved, never explaining that he could withdraw his application at any time. *Id.* ¶ 30, 31.

In March 2005, plaintiff made an offer on a house in Richmond, California, allegedly based upon Gutierrez's statement that it was a good value. *Id.* ¶ 32, 33. Despite a lack of competing offers, plaintiff followed Gutierrez's advice to offer $16,000 above the asking price, which increased Gutierrez's commission by $480. *Id.* ¶ 33. At that time, Gutierrez presented plaintiff with a purchase contract. Plaintiff could not read the document because it was written in English, but he agreed to sign based upon Gutierrez's representations about its contents. *Id.* ¶ 36.

Plaintiff alleges that in April 2005, again reconsidering his decision to proceed, he contacted Gutierrez to protest that he could not afford the property, but Gutierrez did not inform plaintiff that he had no obligation to purchase the home without first obtaining financing on the terms specified in the purchase contract. *Id.* ¶ 41-42. Rather, Gutierrez allegedly behaved in an "abusive and threatening" manner whenever plaintiff attempted to tell her he did not wish to purchase the property. *Id.* ¶ 41. Believing that he was obligated to follow through, plaintiff ultimately closed on the property on May 19, 2005 for a total purchase price of $415,000 despite having a loan with terms different from those specified in the purchase contract. *Id.* ¶¶ 41-43, 47.

To finalize the transaction, plaintiff met with Gutierrez and her husband, also a defendant in this action, at Denny's. Plaintiff alleges that he was presented with "a mountain of documents" to sign, the contents of which were in English. *Id.* ¶ 42. Plaintiff alleges that the contents of the documents presented to him were either misrepresented or not explained and that he paid various closing fees which were not disclosed to him. *Id.* Plaintiff financed the house with two mortgages, the first for $332,000, and the second for $83,000. *Id.* ¶ 50. Because plaintiff's annual income was approximately $26,000

3

and he had "no other assets of significant value," plaintiff believes that defendants submitted false loan applications on his behalf. *Id.* ¶ 38, 40.

Plaintiff alleges that, shortly after the closing, he received demands for mortgage payments and a property tax bill in excess of $4000, which he had never been informed he would have to pay. *Id.* ¶ 59, 61, 62. Plaintiff made his monthly mortgage payments until June 1, 2007, when the increased interest rate on the adjustable-rate mortgages increased his monthly demand from $1591 to $2420, and then later to $2628. *Id.* ¶ 62. Plaintiff defaulted on the payments and a notice of default was recorded on the property on October 15, 2007. ¶ 65. The property was subsequently sold to another party in March 2008. ¶ 67.

Plaintiff alleges that he did not learn of the true terms of the purchase agreement until at least June 2007, when his monthly mortgage payment went up. *Id.* ¶ 63. Subsequently, in April 2008, plaintiff sought the assistance of Legal Aid of Marin County. *Id.* ¶ 69. Plaintiff alleges that he still does not know the specifics of any paperwork that was processed on his behalf by Gutierrez because he never received copies. *Id.* ¶ 28, 44.

## II. Allegations against defendants other than Gutierrez and Marin 1

Plaintiff further alleges that "at some time prior to 2005, Defendants Ownit, MERS, DocMagic, Specialized, Ocwen, Litton, Countrywide, and DocMagic formed and commenced operating a joint enterprise to sell mortgage-loan products to Spanish-speaking persons of foreign nationalities" using only documentation in the English language. *Id.* ¶ 23. Plaintiff alleges that defendants formed this joint enterprise with the aim of "conceal[ing] material mortgage terms of interest to borrowers" in order to maximize the number of loans sold, regardless of whether the loans were procured by fraud or mistake. *Id.* It is through this "Lending and Servicing Conspiracy" that plaintiff seeks to attach liability to all named parties who participated in or had a stake in the purchase of or foreclosure on plaintiff's home.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss,

4

the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume all allegations are true and draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

If the Court dismisses the complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal on statute of limitations grounds should be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

## DISCUSSION

### I. Claims as to Loan Servicers

Plaintiff alleges the following claims against moving defendants Ocwen and Specialized: federal claims for violations of the Fair Housing Act ("FHA") and Fair Credit Reporting Act ("FCRA"), and state law claims for negligence and equitable rescission. Defendants move to dismiss the FHA claim on the ground that it is time-barred and move to dismiss all claims asserted against them for failure to state a claim.

#### A. FHA

The federal Fair Housing Act provides, "It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction,

because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605. Claims under the FHA are evaluated using a Title VII discrimination analysis. *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999). An FHA claim may be brought on either a disparate treatment or disparate impact theory. *Id.* Plaintiff's claim appears to be for disparate treatment. In order to assert a disparate treatment claim under the FHA, plaintiff must establish that: "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Id.*

Although plaintiff does not allege that he ever interacted with defendants Ocwen and Specialized, he attempts to tie these defendants into his FHA claim by alleging that "[d]efendant members of the Lending and Servicing Conspiracy conspired to discriminate against [plaintiff] on the basis of his race and national origin in the terms, conditions, and privileges of the sale and financing of the Property to him." FAC ¶ 150. The conduct complained of includes, but is not limited to, defendants' having used plaintiff's inability to speak English to deny him

> actual disclosure of things required to be disclosed to him by TILA, RESPA, ECOA, FCRA, . . . knowledge of the terms of the Purchase Contract; the First and Second Mortgage . . . knowledge that the interest rate of the First Mortgage was variable . . . that his payments would dramatically increase after two years. . that he would be expected to pay a finance charge for the First Mortgage . . . [and] Second Mortgage[] and . . . knowledge that it was financially impossible for him to purchase the Property.

*Id.* ¶ 151. Defendants Ocwen and Specialized move to dismiss the FHA claim, contending that the claim is time-barred and, in the alternative, that they are not alleged to be involved with the loan organization and are therefore not subject to the FHA claim.

### 1. Timeliness

The statute of limitations for a FHA claim brought by a private party is two years. *See* 42 U.S.C. § 3613(a)(1)(A). The statute begins to run upon "the occurrence or the termination of an alleged discriminatory housing practice." *Id*. Where an FHA plaintiff "challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period, running from] the last asserted occurrence of that practice." *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) (quoting *Havens*

*Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) (footnote omitted)).

Plaintiff contends that the statute has not run as to this claim because the last overt act under the alleged conspiracy occurred within two years of the filing of his complaint. Specifically, plaintiff contends that the loan servicing members of the alleged conspiracy sent notices to plaintiff in June and August of 2007, and as such the conspiracy was ongoing until at least that time. Defendant Ocwen correctly points out, however, that the allegations in the FAC only refer to a statement from June 2007, more than two years before the filing of this action in August 2009. Even assuming that the alleged conspiracy terminated as late as June 2007, the FHA claim is untimely and must therefore be dismissed unless plaintiff can plead a basis for tolling the statute of limitations.

Plaintiff asserts that he is entitled to equitable tolling, advancing two explanations in support. First, plaintiff asserts that he can neither speak nor read English, is marginally literate in Spanish, and that defendants' failure to provide required disclosures in a manner which could have been understood by plaintiff prevented him from discovering the facts giving rise to his claim until less than two years before the filing of this action. Second, plaintiff asserts that he made diligent efforts to discover the terms of the loan agreements in conversations with Gutierrez, and that he was entitled to rely upon Gutierrez's representations during those conversations, thereby satisfying the diligence required of him and entitling him to equitable tolling until he discovered the true terms of the agreement.

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). The doctrine of equitable tolling "focuses on a plaintiff's excusable ignorance and lack of prejudice to the defendant." *Leong v. Potter*, 347 F.3d 1117, 1123 (9th Cir. 2003). Few cases outside the habeas corpus context address whether lack of English proficiency or literacy in any language may toll a statute of limitations. The few cases the Court was able to locate support plaintiff's contention that equitable tolling is available when language or literacy issues prevent a plaintiff from learning the factual basis for his claims. *See Galindo v. Financo Fin., Inc.*, No. 07-3991, 2008 U.S. Dist. LEXIS 82773, at *10-11 (N.D. Cal. Oct. 3, 2008) (tolling limitations period on Truth In Lending Act claim based on plaintiff's inability to read at the time she signed the loan documents); *Gonzalez v. Ameriquest Mortgage Co.*, No. 03-0405, 2004 U.S. Dist. LEXIS 22706 (N.D. Cal. June 3, 2004) (tolling limitations

7

1 period on Truth In Lending Act claim where mortgage broker provided documents only in English
2 despite knowing that plaintiff spoke only Spanish).

Defendants cite to *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) to assert that plaintiff's illiteracy alone is not a basis for equitable tolling. In *Barrows*, however, the plaintiff's allegation was that his illiteracy made him ignorant of his legal rights, and the court denied equitable tolling on the ground that ignorance of one's legal rights is not an excuse for failing to timely file an action. *Id.* at 478. Here, by contrast, plaintiff's allegation is that his illiteracy and lack of English proficiency prevented him from discovering the factual basis for his claim. Plaintiff alleges that he was forced to rely upon defendant Gutierrez's verbal representation of the contents and terms of the documents at issue. In the Court's view, plaintiff has presented a colorable basis for equitable tolling.

After showing that his failure to discover the facts giving rise to his claim was due to "excusable ignorance," however, a plaintiff must also show that he pursued his claim diligently. *Leong*, 347 F.3d at 1123. Before the Court can determine whether plaintiff acted diligently, plaintiff must clarify the relevant facts that led to his discovery of the alleged concealment and misrepresentation. In his amended complaint and his opposition to defendants' motions to dismiss, plaintiff variously alludes to discovering defendants' fraudulent concealment in 2007, 2008, and 2009 with no explanation of the events surrounding his discovery. This ambiguity must be clarified, as the timing of plaintiff's discovery is pivotal to the Court's assessment of plaintiff's entitlement to equitable tolling. Plaintiff must provide more detail regarding his discovery of the misrepresented or concealed loan terms before the Court can reach a decision on the statute of limitations issue related to the FHA and all other claims.

The Court will proceed to consider the merits of plaintiff's FHA claims against the loan servicing defendants.

### 2. FHA violation as to Loan Servicers

Plaintiff has alleged that the loan servicers conspired to violate the FHA by targeting Spanish speakers of Hispanic national origin and inducing them to enter into loan agreements through fraud or mistake. FAC ¶ 23. As stated previously, the federal Fair Housing Act concerns discrimination in real-estate transactions. *See* 42 U.S.C. § 3605. Here, plaintiff simply asserts in a conclusory fashion

8

that defendants "individually, and as a part of a joint enterprise for that purpose, intended to discriminate against him on the basis of his foreign nationality and resulting inability to speak English." FAC ¶ 153. Plaintiff alleges no facts raising an inference that defendants' conduct was motivated by any discriminatory animus. Defendants' motion to dismiss the FHA claim is therefore GRANTED with leave to amend to allege facts supporting plaintiff's theory of discrimination.

### B. FCRA

Plaintiff initially attempted to state a claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* against defendants Ocwen and Specialized In his opposition to these defendants' motions to dismiss, however, plaintiff expressly states that he does not oppose the dismissal of this claim. Accordingly, the claim is DISMISSED without leave to amend as to defendants Ocwen and Specialized.

### C. Negligence

In stating his claim for negligence against Ocwen and Specialized, plaintiff alleges that each had "a duty to not knowingly inflict foreseeable harm upon plaintiff, and a duty not to conspire to intentionally deprive non-English speaking mortgagees of their rights under TILA, RESPA, ECOA, FRCA, FDCPA, and FHA." FAC ¶ 170. Through the breach of that duty, plaintiff alleges injury attributable to defendants in that he paid undisclosed fees and interest, that his credit rating was damaged, and that he has paid real estate taxes in an amount exceeding $6500. *Id.* ¶ 171. Defendants move to dismiss this claim on two grounds: first, for failure to allege the required elements of a negligence claim; and second, on the ground that the principle that banks do not owe a fiduciary duty to their loan customers extends to loan servicers as well.

Under California law, the elements of an action for negligence are the existence of a duty, breach of that duty, causation between the defendant's act or omission and the plaintiff's injuries, and damages. *Merrill v. Navegar, Inc.*, 110 Cal. Rptr. 2d 370, 379 (Cal. Ct. App. 2001). "[P]arties to a contractual relationship, such as a mortgagor and mortgagee, cannot bring a tort claim [for negligence] unless a legal duty independent of the contract itself has been violated." *Gaitan v. Mortgage Elec. Reg. Sys.*, No. 09-1009, 2009 U.S. Dist. LEXIS 97117, at *8 (C.D. Cal. Oct. 5, 2009) (citing *Freeman & Mills, Inc.*

9

*v. Belcher Oil Co.*, 11 Cal. 4th 85, 102-03 (1995)). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991).

Defendants cite to *Huerta v. Ocwen Loan Servicing, Inc.*, No. 09-5822, 2010 U.S. Dist. LEXIS 17970 (N.D. Cal. Mar. 1, 2010) to support their contention that the general rule applied to financial institutions ordinarily applies to loan servicers as well. *See id.* at *4 ("It follows logically that a loan servicer has no fiduciary duty to a borrower when its involvement in the transaction does not exceed the scope of its conventional role as a loan servicer."). The Court finds *Huerta* instructive. Here, as in *Huerta,* plaintiff fails to allege how defendants Ocwen and Specialized exceeded the scope of their conventional role as a loan servicers such that they assumed a fiduciary duty. Accordingly, plaintiff's claim for negligence is DISMISSED without leave to amend as to defendants Ocwen and Specialized.

### D. Equitable Rescission

Plaintiff asserts an equitable rescission claim against all defendants. Plaintiff alleges that he is "entitled to rescission of sale of the Property to him because it was accomplished by constructive fraud, actual fraud, deceit, duress, and coercion, and against his expressed desires, and due to the failure of Defendants to deliver to him the Property and mortgage loans on the terms he had been verbally and otherwise promises." FAC ¶ 108. In his opposition to defendants' motion to dismiss plaintiff has expressly stated that he does not oppose the dismissal of the rescission claim as to defendants Ocwen and Specialized. Plaintiff's claim is therefore DISMISSED without leave to amend.

## II. Claims as to Defendants Gutierrez and Marin 1

Plaintiff asserts claims against defendants Gutierrez and Marin 1 under the Real Estate and Settlement Act ("RESPA"), FRCA (as to Ma1rin 1 only), FHA, and California Civil Code § 1632, as well as common law claims for constructive fraud, fraud, deceit, predatory lending, negligence, negligence per se, breach of fiduciary duty, and equitable rescission.

Defendants Gutierrez and Marin 1assert that all of plaintiff's claims are time-barred. Plaintiff

does not contest the fact that the statutes ran on each of his claims before his complaint was filed, but asserts that he is entitled to equitable tolling for the reasons previously discussed. For the reasons stated above, plaintiff must clarify the timing and circumstances surrounding his discovery of the alleged fraudulent concealment in order to be entitled to equitable tolling. The Court will address the merits of each of plaintiff's claims below.

### A. RESPA

Plaintiff alleges that defendant Gutierrez, working as an agent for Marin 1, was the only person who ever communicated with the plaintiff regarding the financing and purchase of his home. As such, plaintiff alleges that Gutierrez was required to make RESPA disclosures to him, and that her failure to do so deprived him of the opportunity to negotiate the fees associated with the transaction. Defendants move to dismiss the RESPA claim on the ground there is no private right of action for failure to provide required disclosures under RESPA.

RESPA was enacted in part to provide more effective advance disclosure to home buyers of settlement costs and to aid in the elimination of kickbacks or referral fees. *See* 12 U.S.C. § 2601. Although plaintiff's complaint does not specify the sections of RESPA under which he brings suit, his opposition brief states that he is alleging violations of 12 U.S.C. § 2607 and 24 C.F.R. §§ 3500.7, 3500.8, and 3500.10, for failure to disclose certain loan-related fees and failure to provide required settlement disclosures in a manner that could have been understood by plaintiff. Citing *Bloom v. Martin*, 865 F. Supp. 1377 (N.D. Cal. 1994), defendants assert that there is no private right of action for failure to provide RESPA disclosures. However, *Bloom* clarifies that certain sections of RESPA do allow for a private remedy. In *Bloom*, the court held that because some sections of RESPA, namely, 12 U.S.C. §§ 2607 and 2608, refer to relief including treble damages and attorneys' fees, the court could infer a congressional intent to provide a private right of action. *Id.* at 1384. By the same logic, *Bloom* found that 12 U.S.C. §§ 2603, 2604, and 2609, which do not include such remedies, do not provide a private remedy. *Id.*

Here, plaintiff requests relief for a violation of 12 U.S.C. § 2607, which does provide a private right of action as set forth in *Bloom*. Plaintiff's other RESPA claims, however, pertain to sections for

11

which there is no private right of action. Plaintiff seeks relief under 24 C.F.R. §§ 3500.7 and 3500.8. These regulations state that violations thereof "shall be deemed to" be violations of 12 U.S.C. §§ 2604 and 2603, respectively. Both of the statutory sections referenced in the regulations provide no private right of action. Plaintiff's final RESPA claim, under 24 C.F.R. § 3500.10, does not correspond to a violation of a RESPA section; in addition, the regulation does not refer to the types of relief discussed in *Bloom*. Based upon the above reasoning, there is no private right of action for the alleged disclosure violations under 24 C.F.R. §§ 3500.7, 3500.8, and 3500.10. Therefore, plaintiff is only permitted to proceed in an action for punitive damages under 12 U.S.C. § 2607, and his remaining RESPA claims must be DISMISSED with prejudice.

### B.     California Civil Code § 1632

Plaintiff alleges that defendants violated California Civil Code §1632 by failing to provide plaintiff with Spanish-language versions of the loan documents either prior to or after plaintiff's execution of the agreement. FAC ¶ 93. Plaintiff requests rescission of the contract and a return of all fees paid to defendants. Defendants Gutierrez and Marin 1 contend that California Civil Code Section 1632 does not require them to furnish real estate purchase contracts in Spanish.

The statute reads in relevant part:

(b)     Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement:

. . . .

(2)     A loan or extension of credit secured other than by real property, or unsecured, for use primarily for personal, family or household purposes.

. . . .

(4)     Notwithstanding paragraph (2), a loan or extension of credit for use primarily for personal, family or household purposes where the loan or extension of credit is subject to the provisions of Article 7 (commencing with Section 10240) of . . . the Business and Professions Code[.]

Cal. Civ. Code § 1632.

Plaintiff properly points out that the agreements negotiated with defendants are precisely the type

12

covered by Section 1632(b). Although ordinarily the requirement to provide Spanish language documents relates to a "loan or extension of credit secured other than by real property," *id.* § 1632(b)(2), plaintiff is correct that defendants fall within the exemption provided by Section 1632(b)(4), which applies to certain loans secured by real property which are negotiated by real estate brokers. *See* Cal. Bus. & Prof. Code § 10240. The complaint alleges that defendant Gutierrez was a real estate broker, which is sufficient to show that the loan at issue falls within the exception stated in Section 1632(b)(4). *See Ruiz v. Decision One Mortgage Co., LLC*, No. 06-2530, 2006 U.S. Dist. LEXIS 54571 (N.D. Cal. July 25, 2006). Accordingly, defendants' motion to dismiss plaintiff's claim under California Civil Code § 1632 is DENIED.

### C. Constructive Fraud, Fraud, Deceit

Plaintiff brings claims for constructive, actual fraud, and deceit against Ms. Gutierrez and Marin 1. These claims arise out of the same transaction and the same failure to disclose that has been alleged against defendants in the previous claims.

Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." *Gil v. Bank of Am.*, *N.A.*, 42 Cal. Rptr. 3d 310, 317 (Cal Ct. App. 2006). Rule 9(b) of the Federal Rules of Civil Procedure requires a party proceeding in federal court to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003). When allegations of fraud are made about multiple defendants, a plaintiff "must provide each and every defendant with enough information to enable them to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with." *Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (internal quotation marks and citation omitted).

Under California Civil Code § 1709, "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." The term "deceit" is defined as follows:

> 1.The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who

13

is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise, made without any intention of performing it.

*Id.* § 1710.

The Court finds that plaintiff has alleged with particularity the specific statements and actions underlying his claims of fraud and deceit. Plaintiff has set forth a detailed chronology of his interaction with defendant Gutierrez throughout the course of their obtaining the loan, putting defendants on notice of the allegedly fraudulent and deceitful behavior. With respect to the fraud claims, defendants assert that plaintiff has failed to allege justifiable reliance upon the statements made by Gutierrez. Plaintiff has alleged, however, that Gutierrez was the sole party with whom plaintiff negotiated the terms of the transaction, and that based on Gutierrez's capacity as a licensed real estate broker and fiduciary to plaintiff,[2] plaintiff was entitled to rely upon her representations. In the Court's view, these allegations are sufficient to plead justifiable reliance.

Accordingly, defendants' motion to dismiss the claims for fraud and deceit is DENIED.

### D. Breach of Fiduciary Duty

Plaintiff alleges that as persons providing brokerage services, soliciting lenders or otherwise negotiating the First and Second Mortgage, defendants Gutierrez and Marin 1 were acting as fiduciaries to him and as such they had a duty to protect plaintiff from unnecessary loss and to place plaintiff's interests over their own. FAC ¶¶ 182, 183. Plaintiff alleges that Gutierrez and Marin 1 arranged the terms of the loan and made various promises to him throughout the negotiation of the transaction in breach of their fiduciary duty. Defendants move to dismiss without citing any authority to counter plaintiff's legal argument.

Plaintiff's claim of breach of fiduciary duty is based on allegations that defendant Gutierrez made various misrepresentations to plaintiff, and thus is "grounded in fraud." *Vess*, 317 F.3d at 1105. Claims grounded in fraud are subject to the heightened pleading requirements of Rule 9(b), discussed above, even if fraud is not an element of the claim. *Id.*; *Bacon ex rel Moroney v. Am. Int'l Group*, 415

---

[2] The following section of this order discusses plaintiff's allegations regarding Gutierrez's fiduciary role.

14

F. Supp. 2d 1027, 1032 (N.D. Cal. 2006).

Defendants are only liable for breach of fiduciary duty if they owed a duty of care to plaintiff. *See McCollum v. Friendly Hills Travel Ctr.*, 217 Cal. Rptr. 919, 922 (Cal. Ct. App. 1985). Plaintiff has alleged that defendants Gutierrez and Marin 1 owed a fiduciary duty to him though their relationship as a real estate broker and agent of plaintiff. *See* Cal. Fin. Code § 4979.5(a) ("A person who provides brokerage services to a borrower in a covered loan transaction[3] by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer, and any violation of the person's fiduciary duties shall be a violation of this section."). Plaintiff has alleged that defendants breached that duty by engaging in fraudulent conduct. Plaintiff has stated the circumstances allegedly constituting fraud with sufficient particularity, setting forth a detailed chronology of his interaction with defendant Gutierrez. This is sufficient to give defendants notice of the particular misconduct alleged so that they may defend against the charge. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, the Court DENIES defendants' motion to dismiss the breach of fiduciary duty claim.

### E. Negligence and Negligence Per Se

Defendants move to dismiss plaintiff's claims for negligence and negligence per se for failure to state facts sufficient to constitute a cause of action, as the facts are confusing and contradictory. Plaintiff's opposition only addresses the timeliness issue, stating that plaintiff is entitled to equitable tolling for the negligence claims as well.

As stated above, under California law, the elements of an action for negligence are the existence of a duty, breach of that duty, causation between the defendant's act or omission and the plaintiff's injuries, and damages. *Merrill,* 110 Cal. Rptr. 2d at 379 (Cal. Ct. App. 2001). "[P]arties to a contractual relationship, such as a mortgagor and mortgagee, cannot bring a tort claim [for negligence] unless a legal duty independent of the contract itself has been violated." *Gaitan*, 2009 U.S. Dist. LEXIS 97117,

---

[3] The term "covered loan" is defined as a loan "in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association" and certain other conditions are met. Cal. Fin. Code § 4970(b). Defendants do not contest that the loan met this definition.

15

at *8.

As discussed above, plaintiff has adequately alleged that a fiduciary duty was owed to him by defendants Gutierrez and Marin 1. Plaintiff alleges that defendants breached that duty by arranging the execution of the purchase and loan documents in order to prevent plaintiff from knowing the terms of the purchase, and by failing to inform him of the fees they were paying themselves and each other with the financing they procured for him. FAC ¶¶ 165, 167. Plaintiff further alleges that as a result of that breach he was injured financially. *Id.* ¶ 171. Because the Court finds these allegations sufficient to allege a claim of negligence, defendants' motion to dismiss the negligence claim is DENIED.

Plaintiff also alleges a claim for negligence per se premised upon the RESPA and California Civil Code § 1632 violations. For the negligence per se doctrine to apply, the plaintiff must be one of the class of persons for whose protection the regulation was adopted. *Galvez v. Frields,* 88 Cal. App. 4th 1410 (2001). As discussed above, plaintiff has alleged facts sufficient to establish that he is within the class of persons meant to be protected by both RESPA and California Civil Code § 1632. Therefore, the predicate allegations concerning his statutory claims are sufficient to support the negligence per se claim. Accordingly, defendants' motion to dismiss plaintiff's negligence per se claim is DENIED.

### F.     Predatory Lending

Plaintiff brings a claim for "predatory lending" based upon the same factual allegations as his other claims. Plaintiff does not provide the relevant state or federal law that supports this cause of action, and the Court is not familiar with a statute governing predatory lending separate and distinct from the specific claims already brought by plaintiff. As such, this claim is DISMISSED with leave to amend.

### G.     FCRA

Plaintiff asserts a FCRA claim against Marin 1. As with his FCRA claim against Ocwen and Specialized, plaintiff does not address this claim in his opposition. Therefore, Marin 1's motion to dismiss plaintiff's FCRA claim is GRANTED without leave to amend.

**H.     FHA**

As previously discussed, plaintiff alleges an FHA claim against all defendants without differentiating how individual defendants are alleged to have violated the act. Although plaintiff has adequately alleged that defendants' conduct was fraudulent and in breach of various common law duties, plaintiff has not pled any facts giving rise to an inference that defendants' conduct was discriminatory. Defendants' motion to dismiss the FHA claims is GRANTED with leave to amend to allege facts tending to show that defendants acted in a discriminatory manner.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendants' motions to dismiss. (Docket Nos. 35, 40, 46). Plaintiff is granted leave to amend some of his claims to cure the defects identified by the Court. Plaintiff's amended complaint must be filed no later than **April 9, 2010.**

**IT IS SO ORDERED.**

Dated: March 25, 2010

SUSAN ILLSTON
United States District Judge